CHARLES C. PRIEST & another *vs.* JAMES R. NICHOLS & others.

Suffolk. Nov. 13.—Dec. 18, 1874. WELLS & DEVENS, JJ., absent.

If goods of a tenant of part of a building are injured by water escaping from a waste pipe and from an engine, through the negligence of the landlord, who occupies the rest of the building, and who has charge of the waste pipe and engine, the tenant may maintain an action therefor against the landlord.

In an action for injury done to goods by water, the judge instructed the jury on the question of damages, that the evidence must be such that they could decide thereon as to the amount of damage; that guesses of witnesses were not sufficient to found a verdict upon; that the judgment of persons having sufficient knowledge and opportunity of judging as to the amount of goods injured, and as to the extent of the injury, was competent; that exact accuracy in testimony was not required, but that the jury could not give damages to an amount exceeding what they were satisfied of on the evidence. *Held,* that the defendant had no ground of exception.

If goods are damaged by two different causes, and the defendant is only responsible for one of them, the burden of proof is on the plaintiff to show the extent of the damage occasioned by the cause for which the defendant is liable.

In an action for injury sustained by the goods of a tenant who occupied part of a building, caused by the negligence of the landlord who occupied the rest of the building, in not keeping a waste pipe which was in his charge, in repair, there was evidence that the floor of the plaintiff's premises was not level, and that the water flowed down the incline to the goods. The defendant asked the judge to instruct the jury that he was not liable if there was any negligence on the part of the plaintiff in not looking after the waste pipe, or if the fact that the floor was not level caused any additional damage. The judge refused to give these instructions, and instructed the jury that for injuries arising from the plaintiff not taking reasonable precaution to prevent injury, when he had reasonable cause to believe that such precaution was reasonably necessary to avoid damage to his property, the defendant was not liable. *Held,* that the defendant had no ground of exception.

TORT for injury to the plaintiffs' goods by leakage from pipes alleged to be under the control of the defendants.

The first count of the declaration alleged that the plaintiffs were tenants of the first story and basement of a building on Congress Street, Boston, where they carried on business as wool dealers; that the defendants used the second story of the building as a manufactory of chemicals, and had charge of and used, for the purpose of carrying off the waste water and material of their manufactory, a water closet and sink, from which a waste pipe extended down through the plaintiffs' premises, which waste pipe the defendants carelessly and negligently suffered to leak, and from which waste

water and refuse of the chemicals ran upon and through the plaintiffs' wool, greatly injuring it.

The second count, after alleging the use and occupation of the building by the parties as in the first count, set forth that the defendants had a steam-engine upon their premises to supply power to their manufactory, and that by the defendants' negligence the pumps and pipes thereof leaked, whereby a large quantity of water came down into the plaintiffs' premises, spoiling their wool.

The third count was of the same purport, alleging that " the defendants operated, employed and had charge of a steam-engine upon their said premises, and while so operating and running the said engine, the defendants carelessly and negligently suffered the pumps and pipes thereof to get out of order and repair, and leak, whereby a great quantity of water ran down into the plaintiffs' said premises, and spoiled and injured a large amount of the plaintiffs' wool."

Trial in the Superior Court before *Dewey*, J., who allowed a bill of exceptions in substance as follows :

Evidence was offered by the plaintiffs that they occupied the floor and basement under the premises occupied by the defendants. There was an engine on the defendants' floor over the premises of the plaintiffs, put in and used by the defendants to run their manufacturing establishment, after their lease to the plaintiffs, and also used to carry an elevator, which was used principally by the defendants, and occasionally by the plaintiffs. There was also a waste pipe, which, passing from a water closet and two sinks of the defendants, ran down, inclosed in a wooden box, through the premises of the plaintiffs to the basement. At about four feet from the basement floor it made a right angle, and flowed into the sewer, and connected with this waste pipe was a sink and water closet of the plaintiffs. The damages alleged in the declaration were caused by the water flowing back from the sewer at high tides and flooding the basement, and thereby damaging the plaintiffs' wool, then piled up on the floor, by a leak in the waste pipe at the angle in the plaintiffs' basement, and at a similar angle immediately over it on the premises of the defendants, from which the water leaked in upon the plaintiffs' wool in a room above the basement, and by water leaking down from the defendants' boiler and engine upon the plaintiffs' wool in the same upper room.

The plaintiffs testified that about the middle of July, 1872, their floor was flooded by the water backing in from the sewers, and damaging their wool, but were unable to state the precise amount of damage then caused, or by any subsequent leaking.

The plaintiffs also testified that from July, 1872, to November, 1872, water came down occasionally from the engine and boiler in the defendants' premises, and on one occasion water enough came down to wet the floor to a considerable extent, and that they were obliged to remove some bags of wool. They were not able to say exactly how much wool was injured in this way, but stated the amount of the injury in their judgment.

They further testified that some time in August a leak was discovered in the waste pipe, and the water had flowed down from the defendants' premises and wet their wool, stored on the floor of the plaintiffs over the basement; that the defendants, on being notified, had repaired the same; that damage had been done thereby. As to the amount of the damage, the witnesses testified as to their judgment, but were unable to say exactly how much. Some time after, a leak was discovered in the basement of the plaintiffs' premises at the elbow of the waste pipe, the water from which had flowed on to the floor, and, the floor being inclined, had flowed the entire length of the building, and had damaged considerable wool on the floor; the water from the leak at the elbow had flowed along the entire length of the floor, and damaged considerable wool in that way, but they were unable to state the exact amount. The leak had continued for some time before it was discovered, and when the defendants were notified they repaired the same, and since that time no damage had been done. By water from the engine and leaks in the pipe, some 20,000 pounds of wool had been damaged about ten per cent. of its value, which was fifty cents per pound. They had paid about $100 for having about twenty bags, which had thus been damaged, cleaned, and three loads had been carted off for manure. No bill had ever been presented to defendants for damages, but they had claimed damages of the defendants, and none of this wool had been sold for anything less by reason of the damage so done, as it was on the premises when they were destroyed by fire. In making up their proof of loss, no mention was made of any damaged wool, because their losses largely exceeded their insur

ance. The waste pipe was in the premises at the time of the first occupation thereof by the plaintiffs, and it was in evidence that the pipe had been in for many years ; that it was not originally strong, and had become defective and weakened by long use, and that the defendants had by their employment of their plumber at different times to repair the same, treated the same as being under their charge.

At the request of the defendants' counsel, all evidence of damage done by reason of the tide backing in to the sewers and doing damage by flooding the basement was excluded.

At the close of the plaintiffs' case upon the foregoing evidence, the defendants asked the judge to rule that the plaintiffs were not entitled to recover ; but the judge declined to give this ruling.

The defendants then offered evidence that the boiler, engine and pipes, were during this time in the best order and condition, and that the engine was run and managed with the best of care, and that occasional leaks from the boiler and pipe were unavoidable ; that the elevator was run by said engine for the mutual benefit of both parties. The defendants also testified that as soon as they knew of the leak in the waste pipe they had immediately repaired the same ; and that no complaint of damage to wool had been made to them except from the tide overflowing the sewers, and so flooding the basement of the premises, when the defendants had told the plaintiffs that they could leave the premises at any time, and that afterwards they had put in a floor to the basement.

The counsel for the defendants asked for the following instructions : "1. The allegations showing that the defendants had a right to use the waste pipe, it is to be taken for granted that they had the right to use it in the ordinary way. They were not obliged to repair it ; and if they used it in the ordinary way they are not liable for any damages. They are liable only for gross negligence in the use of the same, and damages resulting from such gross negligence. 2. The defendants are only liable for gross negligence in the management of their engine and boiler, it being there for the mutual benefit of the parties. 3. That as the engine and boiler were placed in the defendants' premises by consent of the plaintiffs, and for the benefit of both parties, as there is no evidence to show gross carelessness or neglect in the man-

agement of the same, and no evidence to show any want of care on the part of the defendants, the plaintiffs cannot recover on either of the two counts relating to damage done by reason of the water from the engine or boiler. If the plaintiffs took the premises as they were at the time of the execution of the lease, the pipes might be used by the defendants in the same way they had been heretofore. The facts show an implied assent of the plaintiffs for the defendants to use the waste pipes for their waste water, and they are not liable for any damage done by its leaking or bursting, if they used them with ordinary care. 4. The waste pipe being on the inside, if the damage could have been avoided by keeping it in repair, the defendants are not liable for its bursting ; nor are the defendants liable if there was any want of care or any negligence on the part of the plaintiffs in not looking after said waste pipe. 5. If the decline in the floors of the plaintiffs' premises in any way contributed to cause the water to flow from the place of its bursting to the front of the store, and by such flow of water caused the wool to be damaged, which would not have been so damaged if the floor had been level, the plaintiffs cannot recover. 6. In this action, where the damages alleged were caused by different causes, each of which causes more or less damaged the plaintiffs' wool, if a portion of the damages was for causes for which the defendants were not liable, the burden of proof is upon the plaintiffs to show the damage done by causes for which the defendants were liable ; and if they fail to offer testimony tending to show this, or to apportion the damages done by the different causes, they cannot recover."

The judge declined to give these instructions, and instructed the jury as follows :

" 1. That to recover on the first count, the plaintiffs must prove that the defendants had the charge of and used for the purpose of carrying off the waste water, a water closet and sink, from which a waste pipe extended down through the plaintiffs' premises, and that the defendants carelessly and negligently suffered the waste pipe to leak, and the waste water from the water closet to run upon and through the plaintiffs' wool, thereby injuring and spoiling the same ; and if this is proved, the defendants are responsible for the damages arising therefrom.

" 2. That to recover on the second count, the plaintiffs must prove that the defendants had a steam-engine upon their premises for obtaining power to use in their manufactory, and that they so carelessly and negligently managed and operated said engine as to cause the pumps and pipes thereof to leak, whereby a large quantity of water came down from the premises of the defendants upon the premises and property of the plaintiffs, and thereby injured and spoiled their said property.

" 3. That to recover on the third count, the plaintiffs must prove that the defendants had a steam-engine upon their premises, which they operated, employed and had the charge of, for their own business purposes, and while so operating and running the engine, the defendants carelessly and negligently suffered the pumps and pipes thereof to get out of order and repair, and to leak, and that thereby a quantity of water ran down into the plaintiffs' premises, and spoiled and injured a quantity of wool of the plaintiffs."

4. On the question of damages, the judge instructed the jury : " That the defendants were responsible for the direct, but not for the remote injury, caused by their negligence and carelessness," stating fully the distinction between direct and remote injuries, to which no objection was made. " That the evidence must be such that the jury may be able to decide thereon as to the amount of the damage ; that guesses of witnesses were not sufficient to found verdicts upon ; that the judgment of persons having sufficient knowledge and opportunity of judging as to the amount of the wool injured and as to the extent of its injury are competent ; that exact accuracy in testimony is not required, but that the jury could not give damages to an amount exceeding what they are satisfied of on the evidence.

" 5. That when the damage was occasioned by different causes, from each of which there was more or less damage to the plaintiffs' wool, if a portion of the damage was from causes for which the defendants were not liable, as from the tide water, the burden of proof was on the plaintiffs to show the damage to the wool from causes for which the defendants are liable, as distinguished from the other causes ; and for this damage only could the plaintiffs recover.

"6. That for injuries arising from the plaintiffs not themselves taking reasonable precaution to prevent injury, when they had reasonable cause to believe that such precautions were reasonably necessary to avoid damage to their property, the defendants were not liable."

The jury found for the plaintiffs, and the defendants alleged exceptions.

*T. Weston, Jr.,* for the defendants.

*B. Dean,* for the plaintiffs, was not called upon.

ENDICOTT, J. There was evidence upon which this case could properly be submitted to the jury. The plaintiffs occupied as tenants the lower floor of a building belonging to the defendants. The defendants occupied the floor above. There was a pipe leading through the plaintiffs' premises which conveyed the waste water and material from the manufactory, sinks and water closet of the defendants to the sewer below. This pipe was alleged to be in charge of the defendants, and evidence was offered that they had so treated it, and had, from time to time, upon notice, made repairs upon it. But they negligently suffered it to be out of repair, whereby the water damaged the goods of the plaintiffs. It was a question of fact for the jury, whether the pipe was in charge of the defendants, and was out of repair through their negligence. The rule that a landlord is not bound to keep the premises of his tenant in repair, and therefore cannot be held responsible for negligence, if out of repair, has no application to the facts presented in this case.

The defendants also had an engine on their premises, and the plaintiffs contended that by their negligent management of the engine, and their negligence in not keeping its pipes and pumps in repair, they leaked, and caused the water to come down and damage their goods. Evidence was offered on these points, and it was for the jury to decide.

The rulings of the presiding judge were carefully stated, and are not open to exception.                *Exceptions overruled.*