# Pierce, Appellant v. Lehigh Valley Coal Company.

*Mines and mining—Deposit of culm—Pollution of stream—Waters.*

1. The proprietor of a mining operation has no right to discharge culm and other refuse of the mine into a stream or to leave it where it could be carried by ordinary floods onto the land of other persons. If he does so dispose of it he renders himself liable for any damage resulting therefrom to such owner.

2. In an action to recover such damages where there is evidence that the culm in very large quantities was deposited on plaintiff's land from the defendant's mine, the plaintiff's case is for the jury, although there may be evidence that culm from the mines of other owners was also deposited upon plaintiff's land. In such a case it is for the jury to determine to what extent the culm deposited by the defendant in the stream, damaged the plaintiff's land.

Argued March 2, 1909. Appeal, No. 44, March T., 1909, by

plaintiff, from judgment of C. P. Luzerne Co., March T., 1904, No. 179, on verdict for defendant in case of Harry W. Pierce v. The Lehigh Valley Coal Company. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Trespass to recover damages for injuries to land. Before FERRIS, J.

At the trial defendant presented the following point:

1. The question whether the culm was deposited in the river by the defendant, and if any, how much of the same was washed by the flood of 1902, upon the plaintiff's land, is for the determination of the jury, and if the jury believes under all the evidence that the defendant did deposit culm in the river and that the same, or any part thereof was washed by the flood of 1902 on the plaintiff's land, then the plaintiff is entitled under the evidence to recover whatever it would reasonably cost to remove this culm from the land. *Answer:* The plaintiff's point I cannot affirm as it is stated, and therefore it is refused. [1]

The court charged the jury in part as follows:

[We therefore instruct you to find a verdict in this case in favor of the plaintiff and against the defendant for nominal damages, not for compensatory damages at all.] [2]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1, 2) above instructions, quoting them.

*William S. McLean,* with him *John A. Opp,* for appellant.— There was abundant evidence to support the claim set forth in the declaration, and it was the duty of the court to submit these questions of fact to the jury. The facts shown constituted a nuisance: Stokes v. Penna. R. R. Co., 214 Pa. 415; Green v. Sun Co., 32 Pa. Superior Ct. 521; Longenecker v. Penna. R. R. Co., 105 Pa. 328; Clark & Co. v. Railroad Co., 27 Pa. Superior Ct. 251; Trexler v. Balt. & Ohio R. R. Co., 28 Pa. Superior Ct. 198.

Under all the evidence in the case the jury would have been justified in finding that the entire damage done, was caused by

the wanton, willful and reckless conduct of the defendant: Greeney v. Water Co., 29 Pa. Superior Ct. 136.

The plaintiff is not precluded from recovery against one tort feasor by showing that others have borne a share in it: North Penna. R. R. Co., v. Mahoney, 57 Pa. 187; Rahenkamp v. Traction Co., 14 Pa. Superior Ct. 635; Bricker v. Conemaugh Stone Co., 32 Pa. Superior Ct. 283; Hoffman v. Coal Co., 16 Pa. Superior Ct. 631; Gould v. McKenna, 86 Pa. 297; DeGrazia v. Piccardo, 15 Pa. Superior Ct. 107.

*J. B. Woodward,* of *Wheaton, Darling & Woodward,* with him *S. P. Wolverton,* for appellee.—An owner of a mine who deposits culm in a stream or in a place where only an extraordinary flood will carry it down upon his neighbor is not liable: Elder v. Lykens Valley Coal Co., 157 Pa. 490; Sipe v. R. R. Co., 219 Pa. 210; Little Schuylkill Nav., etc., Co. v. Richards, 57 Pa. 142; Seely v. Alden, 61 Pa. 302; Howard v. Traction Co., 195 Pa. 391.

OPINION BY HENDERSON, J., October 11, 1909:

It is a well-established rule of law regulating mining operations that the proprietor has no right to discharge culm and other refuse of the mine into a stream or to leave it where it will be carried by ordinary floods onto the land of other persons. If he does so dispose of it he renders himself liable for any damage resulting therefrom to such owner: Lentz v. Carnegie Bros. & Co., 145 Pa. 612; Elder v. Lyken Valley Coal Co., 157 Pa. 490; Hindson v. Markle, 171 Pa. 138. Where the material is unlawfully put into the stream the fact that an extraordinary flood was a contributing cause in carrying it onto the plaintiff's land does not relieve the person whose wrongful act placed the injurious material in the channel. A considerable part of the plaintiff's land was injured by a deposit of culm thereon at the occurrence of a flood in the Susquehanna river in 1902. His allegation is that this resulted from the act of the defendant in discharging culm from the Dorrance and Prospect mines owned by it into the river, whence it was carried by the action of a flood and lodged on his farm. The evidence as to

the injury to the land is direct and clear, as is that showing the placing of culm in the river at the defendant's mines. A jury might properly find from this evidence that culm not mixed with sand or gravel had been deposited in large quantities on several acres of the farm; that no such deposit had been made there before and that none similar occurred along the stream in that flood except in a slight degree on the land of an adjoining owner. It was not seriously contended that the plaintiff was not substantially injured. The principal ground of defense was that there were many coal mines and washeries along the Lackawanna river and its tributaries; that they discharged large quantities of culm and refuse along that stream which was washed down; that the Lackawanna river flows into the Susquehanna river, carrying in its water large amounts of culm; that this culm was distributed through the water of the Susquehanna and that the plaintiff's injury was chargeable in part at least to this cause, and that as the plaintiff had not shown to what extent the refuse of other mines and washeries had contributed to his injury he could not recover against the defendant. The learned trial judge entertaining this view of the case instructed the jury that they could only award nominal damages to the plaintiff. This result could only be reached by giving credit to the testimony of the witnesses for the defendant who testified to a variety of conditions and circumstances tending to show that the waste of other mines was carried onto the plaintiff's land. A part of this evidence was theoretical and speculative and opened a large field for inference. The value of material parts of the evidence depended on the credit which the jury would attach to the testimony of the witnesses, and as the defendant had taken the burden of showing that it was not alone responsible for the plaintiff's damage the jurors were the judges of the facts. How much of the refuse of mines along the Lackawanna Valley ten or twenty or thirty miles away from the plaintiff's farm was carried into the Susquehanna, how widely it was distributed there, what the course of the stream was or the action of cross currents could only be ascertained by the jury from a consideration of all the evidence, and when we regard the plaintiff's evidence that much of the deposit on his

land was pure culm, that the culm bars a mile or two away at the defendant's mines were removed by the high water and that the ice gorge changed the course of the flow of the stream it becomes apparent that the plaintiff's case is not simply one of injury from the general flow of the water of the river, but the allegation of the transfer of a large part of a specific body of culm from the defendant's mines onto his farm. His evidence shows approximately the dimensions of this body of culm and that his damage was received at the time it was carried out by the ice and water. He shows the amount distributed over a part of his farm, and if the jury credited the evidence offered by him the conclusion that a large part at least of this culm came from the bar which the defendant cast into the stream would not be a guess merely. It would not be an unreasonable consideration that the culm carried by the Lackawanna river into the Susquehanna would be distributed through the water of the latter stream and found deposited over all the low land as the water receded if a large quantity of culm came out of the Lackawanna; whereas the plaintiff's evidence would lead one to believe that the only culm in any considerable quantity found along the stream in that vicinity was on a few acres of his land and a small part of that of one of his neighbors although the whole valley was overflowed at the time of the flood. The inquiry in its very nature is more or less indefinite, but it is proper to take into consideration the distance of other mines or washeries from the property injured, the extent to which the refuse from them was carried into the Susquehanna, the extent to which the action of the water in the Lackawanna and the Susquehanna would mingle the culm with sand or other material carried down by the flood, the proximity of the defendant's plant, the quantity of deposit cast onto the plaintiff's land, the quantity carried out from the defendant's works at the time of the flood and other attending circumstances. The facts must be ascertained according to the best evidence the nature of the case affords. The difficulty of separating the damage if any done by the defendant from that for which others may be responsible is not to be underestimated, but that is not sufficient in itself to justify the denial of the right of

recovery in the case of wrongful injury. This difficulty was recognized in Little Schuylkill Nav., etc., Co. v. Richard, 57 Pa. 142, and Gallagher v. Kemmerer et al., 144 Pa. 509; but was not considered sufficient to bar a recovery. That the defendant is not responsible for the wrongful acts of others cannot be questioned. If the deposit complained of was carried down from other coal operations than those managed by the defendant the latter cannot be charged with the consequence of the fault of others. It was the duty of the plaintiff to introduce evidence to show to what extent the injury complained of was the consequence of the defendant's action, but it cannot be expected that this can be done with mathematical exactness. Evidence which reasonably tends to support the plaintiff's allegation is sufficient. A careful consideration of the voluminous evidence offered leads us to the conclusion that the case should have gone to the jury on the question whether and to what extent the culm deposited by the defendant in the river damaged the plaintiff's land: Hoffman v. Coal Co., 16 Pa. Superior Ct. 631; Little Schuylkill Nav., R. R. & Coal Co. v. French & Funk, 81* Pa. 366; Seely v. Alden, 61 Pa. 302, and Gallagher v. Kemmerer, supra. The appellee relies on Sipe v. Penna. R. R. Co., 219 Pa. 210, as a controlling authority. We do not understand that case, however, to go to the extent contended for. That was an action for damages for negligently depositing stone, earth and other débris in the plaintiff's dam, thereby reducing its capacity as a reservoir. The opinion of the court indicates that there was evidence that there had been a natural accumulation of sediment in the dam brought down by the flow of water from Laurel Run and accumulated in the course of years from other sources. Under such circumstances it was held that it was incumbent on the plaintiff to furnish evidence from which the jury might conclude with some degree of certainty that the deposit of sediment which filled up the bed of the stream was the result of the action of the defendant, and that to show the fact merely that there was sediment in the river bed after the date when the company built its bridges at points considerably distant from the dam was not sufficient. It was said by the court: "The plaintiff seems to have been allowed to

submit to the jury the broad claim that the construction of the piers and abutments of the bridges, situated hundreds of feet above the mill and the breast of the dam, constituted an interference with his water power. This was a mistake. That construction, if properly made, was carried out under the right of eminent domain after due compensation paid, or secured to be paid, for the property taken. It was only the loose material and débris improperly deposited in the river, or negligently allowed to wash down the stream, and which tended to fill up the river bed to the injury of the water power, which gave rise to the right of action in this case." There was nothing in the case to show how much of the sediment in the dam was there before the bridges were constructed.. The case before us more nearly resembles Elder v. Lykens Valley Coal Co., 157 Pa. 490, and Gallagher v. Kemmerer, 144 Pa. 509. Our conclusion is that the case was for the jury on the question of compensatory damages.

The judgment is, therefore, reversed and a venire facias de novo awarded.