# Eckman v. Lehigh & Wilkes-Barre Coal Company, Appellant.

*Mines and mining—Deposit of culm—Pollution of stream—Injuries to land—Damages.*

1. The proprietor of a mining operation has no right to discharge culm and other refuse of the mine into a stream, or to leave it where it will be carried, by ordinary floods, onto the land of other persons. If he does so dispose of it, he renders himself liable for any damages resulting therefrom to such owner. And, where the material is unlawfully put into the stream, the fact that an extraordinary flood was a contributing cause in carrying it onto the plaintiff's land does not relieve the tort feasor from responsibility for his wrongful act.

2. A joint action cannot be maintained against several proprietors of coal operations acting independently, who thus cast culm into a stream, which is washed onto the land of another, but each is liable for the proportion of damages he caused, and that only.

3. The difficulty of ascertaining with mathematical exactness the

proportion of damages caused by each tort feasor—a difficulty caused by himself—is not ground for denying the plaintiff the right to recover a substantial sum; evidence which reasonably tends to show the relative proportion, and is the best evidence of which the case is susceptible, is sufficient to warrant submission of the question to the jury under appropriate instructions.

4. In such a case, even if the evidence of substantial damages is insufficient, the plaintiff may recover nominal damages.

5. Where a legal right has been invaded, and substantial damages claimed, the extent of which cannot be ascertained with certainty, nominal damages may be recovered.

*Practice, C. P.—Judgment n. o. v.—Act of April 22, 1905, P. L. 286.*

6. Under the Act of April 22, 1905, P. L. 286, if it appear that there is a conflict of evidence on a material fact, or any reason why there cannot be a binding direction, then there can be no judgment entered against the verdict.

Argued March 4, 1911. Appeal, No. 18, March T., 1912, by defendant, from judgment of C. P. Montour Co., Jan. T., 1908, No. 38, on verdict for plaintiff in case of Sophie G. Eckman v. Lehigh & Wilkes-Barre Coal Company. Before RICE, P. J., HENDERSON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Trespass to recover damages for injuries to land. Before EVANS, P. J.

The opinion of the Superior Court states the facts.

Verdict and judgment for plaintiff for $1,417.11.

*Errors assigned* were (1) refusal of binding instructions for defendant; (2) refusal of defendant's motion for judgment n. o. v.

*Daniel W. Kaercher*, with him *William Kase West* and *A. L. Williams*, for appellant.—For an injurious trespass the measure of damages is the cost of remedying the injury unless that exceeds the value of the thing injured when such value becomes the measure: Lentz v. Carnegie, 145 Pa. 612; Eshelman v. Martic Township, 152 Pa. 68; Welliver v. Canal Co., 23 Pa. Superior Ct. 79; Herron v. Jones

& Laughlin Company, 23 Pa. Superior Ct. 226; Harvey
v. Susquehanna Coal Co., 201 Pa. 63; Smith v. Loag, 132
Pa. 301.

Before the market value may be given as the measure
of damages it is incumbent on the person injured to give
evidence from which the jury may conclude with some de-
gree of certainty that the former measure (whether or
not the cost of remedying the injury exceeds the value of
the land injured) will not fully compensate him for the
injury: Hoffman v. Mill Creek Coal Co., 16 Pa. Superior
Ct. 631; Elder v. Lykens Valley Coal Co., 157 Pa. 490;
Stevenson v. Coal Co., 201 Pa. 112; Stevenson v. Coal
Co., 203 Pa. 316; Bachert v. Lehigh Coal & Nav. Co.,
208 Pa. 362; Bricker v. Conemaugh Stone Co., 32 Pa.
Superior Ct. 283.

The difficulty of separating the injury of each from the
others is no reason that one man should be held to be
liable for the torts of others without concert: Little Schuyl-
kill Navigation, R. R. & Coal Co. v. Richards, 57 Pa. 142;
Seely v. Alden, 61 Pa. 302; Howard v. Traction Co., 195
Pa. 391; Leidig v. Bucher, 74 Pa. 65; Gallagher v. Kem-
merer, 144 Pa. 509; Sipe v. Pennsylvania Railroad Co.,
219 Pa. 210; Pierce v. Lehigh Valley Coal Co., 40 Pa.
Superior Ct. 566, and 232 Pa. 165.

*H. M. Hinckley*, with him *Edward Sayre Gearhart*, for
appellee.—The verdict and judgment was proper: Pierce
v. Coal Co., 40 Pa. Superior Ct. 566; Gallagher v. Kem-
merer, 144 Pa. 509; Little Schuylkill Nav., R. R. & Coal
Co. v. Richards, 57 Pa. 147; Little Schuylkill Nav., R. R.
& Coal Co. v. French, 81 Pa. 366; Elder v. Coal Co., 157
Pa. 490; Bricker v. Stone Co., 32 Pa. Superior Ct. 283.

OPINION BY RICE, P. J., July 18, 1912:

The plaintiff's land is situated on the south side of the
Susquehanna river, about three miles below the mouth of
Catawissa creek, which flows into it. By her amended
statement she claimed that her land was permanently

injured and depreciated in market value by the deposit thereon of culm. The allegation that culm was brought on her land by the floods of 1901, 1902 and 1904, was supported by abundant testimony and is not really in dispute. But one of the questions suggested in the appellant's statement of the questions involved is, whether she could recover, as for a permanent injury, the difference in market value, without introducing evidence from which the jury could find what would be the cost of removing the deposit of culm and restoring the land to its former condition. In reply, appellee's counsel call attention to testimony tending to show, as they claim, that the culm became so mixed with the soil that it was impossible to remove it and restore the soil to its former productiveness. Whilst this was controverted by the testimony introduced by the defendant, we cannot say that there was no testimony from which the jury could find the fact to be as claimed by the plaintiff, nor that the court would have been warranted in charging that, even though they so found, they must still regard the injury as temporary or nominal, in assessing the damages. Moreover, this part of appellant's argument goes to the measure of damages, a question not raised by the assignments of error, rather than to the plaintiff's right of recovery. Therefore, without further discussion of this subject, we proceed to consideration of the main question, namely, the responsibility of the defendant for the injury.

At and prior to the floods referred to, the defendant owned and conducted two collieries at the headwaters of Nescopeck creek, and there was evidence that culm from these collieries was deposited, by the defendant, along the creek in such manner that it was carried down the creek into the river, thence down the river, and, by the floods referred to, onto the plaintiff's land. There was sufficient evidence to warrant the submission of this question of fact to the jury; it was submitted fairly; and, therefore, the fact must be regarded as established by their verdict. But it appears that there were three other

collieries, belonging to other persons, at the headwaters of Nescopeck creek, and that culm from these collieries was deposited in or along the creek in the same manner, and it is quite clear that the culm that was thus brought on the plaintiff's land from the defendant's collieries was commingled with the culm brought there in the same way from these other collieries. The case is further complicated by the evidence introduced by the defendant, that between the headwaters of the Lackawanna river, which flows into the Susquehanna, and the mouth of Nescopeck creek, a distance of eighty-four or eighty-five miles, there were 127 coal operations and washeries discharging culm and mine refuse into the river above the plaintiff's land during the years 1901, 1902, 1903, 1904, and for a long time prior thereto; and it is claimed that culm from these sources, also, was commingled with the culm that came from the operations at the headwaters of Nescopeck creek and contributed to the injury of which the plaintiff complains.

The principles applicable to this class of cases are well settled by the decision, most of which are collected in Judge Henderson's opinion in Pierce v. Lehigh Valley Coal Co., 40 Pa. Superior Ct. 566.

1. The proprietor of a mining operation has no right to discharge culm and other refuse of the mine into a stream, or to leave it where it will be carried, by ordinary floods, onto the land of other persons. If he does so dispose of it, he renders himself liable for any damages resulting therefrom to such owner. And, where the material is unlawfully put into the stream, the fact that an extraordinary flood was a contributing cause in carrying it onto the plaintiff's land does not relieve the tort feasor from responsibility for his wrongful act.

2. A joint action cannot be maintained against several proprietors of coal operations acting independently, who thus cast culm into a stream, which is washed onto the land of another, but each is liable for the proportion of damages he caused, and that only.

3. The difficulty of ascertaining with mathematical exactness the proportion of damages caused by each tort feasor—a difficulty caused by himself—is not ground for denying the plaintiff the right to recover a substantial sum; evidence which reasonably tends to show the relative proportion, and is the best evidence of which the case is susceptible, is sufficient to warrant submission of the question to the jury under appropriate instructions.

Thus, in Little Schuylkill Nav. R. R. & Coal Co. v. French, 81* Pa. 366, which was affirmed by the Supreme Court, the learned trial judge charged the jury upon this last question as follows: "This is undoubtedly a difficult question to determine; from its very nature the truth only can be arrived at proximately. But it is nevertheless the duty of the jury to determine this according to the light which the evidence sheds upon it. You must take into consideration all the facts of the case, the places where these different deposits were made and how they were made, their nearness or distance from the plaintiffs' land, the manner in which they were protected, their nearness or distance from the river bank, the relative amount thrown directly into the river compared with that deposited by its side, the relative number of deposits for which the defendants would be responsible, as compared with the others; these and many other things must be taken into consideration by the jury in determining how much of the coal dirt and other stuff in plaintiff's dam and race the defendants are accountable for, and after all the result you will arrive at will probably be but an approximation of the truth. The matter is, in its very nature, uncertain." This is very apt language to be used in the decision of this difficult question. So, in Gallagher v. Kemmerer, 144 Pa. 509, the argument was made that it was impossible to separate and ascertain the relative proportion of damage occasioned by the defendants' act, but the case was held to be proper for submission to the jury with instruction as follows: "Now, in deciding that question, you are authorized to take into consideration

the nature of the stream, the location of these several breakers, the length of time they had been in operation, and the difference in the methods of preparing coal for the market. I shall not refer to these matters in detail, but you will take them into consideration in determining what was the proportion of injury caused by the defendants." In Seely v. Alden, 61 Pa. 302, the burden cast on the plaintiff in such cases was thus stated: "If others above on the stream contributed to the deposit of tan bark or other matter in the pool, the defendant cannot be held liable for their injury, but his deposit must be separated by means of the best proof the nature of the case affords, and his liability ascertained accordingly." Again, in Pierce v. Lehigh Valley Coal Co., 232 Pa. 165, a case very much like the present, as will be seen by a perusal of Judge HENDERSON's opinion in 40 Pa. Superior Ct. 566, Justice MESTREZAT said: "Of course the evidence did not show with mathematical certainty the exact amount of culm from the defendant's collieries deposited on the plaintiff's land, that could not be expected, but it was sufficiently certain to justify the jury in finding the proportion of culm which they did find came from the defendant's collieries. In determining the accuracy of the verdict as to defendant's proportion of the culm on the plaintiff's land, it must not be overlooked that the jury at the request of the defendant spent three days in examining the premises with the assistance of two 'showers' appointed by the court who were intimately acquainted with the places from which culm was produced along the Susquehanna river and its tributaries. This aided the jury greatly in passing on the vital question in the case." The same consideration may be referred to in the present case with equal appropriateness, for, as stated in the opinion of the learned trial judge, the jury in charge of the sheriff, accompanied by showers representing both plaintiff and defendant, carefully viewed the plaintiff's land, the coal operations at the headwaters of Catawissa creek and those along the river and tributary

streams, also the bed of the streams. Ten days were occupied in making the view. In view of this fact, and the facts testified to, we are unable to conclude satisfactorily that the best evidence of which the question in dispute was susceptible was not produced, or that it was insufficient in law to warrant submission of the question of the relative proportion of damage for which the defendant was responsible to the jury; and it is to be noticed that the jury were able to find specifically that the total damages amounted to $4,000, and that the proportion for which the defendant was liable was $1,142.85. To hold that the evidence was not sufficient to warrant the submission of this question to the jury, in a case so complicated as this was, and where it is alleged so many parties at different places were contributing to the injury, would be practically to hold that there could be no recovery of compensatory damages by reason of the very uncertainty for which the plaintiff was not responsible, but the defendant in a degree was. But assuming, for the sake of argument only, that the evidence was insufficient, it by no means follows that the defendant was entitled to binding direction. Evidence had been given of a tortious injury committed by it, and, at least, the plaintiff was entitled to recover nominal damages. Where a legal right has been invaded, and substantial damages claimed, the extent of which cannot be ascertained with certainty, nominal damages may be recovered.

There are but two assignments of error: one to the refusal of the court to charge that, under the pleadings and all the evidence in the case, the verdict must be for the defendant; and the other to the denial of the defendant's motion for judgment non obstante veredicto. The act of 1905 makes no radical change in the law or the relative functions of the court and jury, but broadens the power of the court and authorizes it, where binding instructions have been declined at the trial, to enter such judgment as should have been entered upon the evidence. If it appear that there is a conflict of evidence on a ma-

terial fact, or any reason why there cannot be a binding direction, then there can be no judgment entered against the verdict: Dalmas v. Kemble, 215 Pa. 410.  We have discussed the case sufficiently to show, we think, that it was not a case for binding direction in the defendant's favor, and, therefore, we do not deem it incumbent on us to discuss some of the other questions that have been suggested in the able brief of appellant's counsel.

The assignments of error are overruled and the judgment is affirmed.