Kelso et al. *v.* Phila. R. T. Co., Appellant.

Argued September 27, 1933. Before
KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER
and JAMES, JJ.

*Layton M. Schock,* and with him *Bernard J. O'Connel,* for appellant.

*Michael A. Foley,* and with him *Henry I. Koplin,* for appellee.

Opinion by James, J., February 1, 1934:

The only question raised on these appeals is whether or not binding instructions should have been given for the defendant.

On motion for judgment non obstante veredicto the plaintiff is entitled to have the testimony in his behalf considered in its most favorable aspects and he is to be given the benefit of every pertinent fact and inference of fact reasonably deducible therefrom and all unfavorable to him rejected: Snyder v. Penn Liberty Ref. Co., 302 Pa. 320, 153 A. 549; Pope v. Reading Co., 304 Pa. 326, 329, 156 A. 106. Upon that question we must give to the plaintiff the benefit of all the facts which the jury might have found in his favor and exclude from consideration all those things which the jury might have rejected.

On the evening of November 24, 1928, at about 9:30 P. M., the plaintiff, James Kelso, Jr., was riding in the left rear seat of a Chevrolet closed car being operated northwardly on Delaware Avenue. Three persons sat in the front seat and another with the plaintiff in the rear seat. The testimony showed that it was a cloudy night. Near the intersection of Delaware Avenue with Spring Garden Street, the automobile collided with the

front of a sand car of the defendant which was facing west on the east side of Delaware Avenue. Delaware Avenue runs north and south and is entered from the west near the point of the accident by Spring Garden Street; on the east Delaware Avenue is bounded by the Delaware River and its piers and bulkheads, including the office of the defendant located just north of what would be the north house line of Spring Garden Street if it were extended. The sand car was being operated from the pier on the east side of Delaware Avenue and its position as it came off the wharf or pier was at right angles to the traffic on Delaware Avenue. In moving the car from the pier, it was operated by means of a fish pole connected with an underground trolley until it reached Delaware Avenue when it was changed from the underground to the overhead trolley. The evidence of the plaintiff tended to establish that the sand car was moving, while the evidence of the defendant tended to establish that it was standing, at the time of the accident. If it was moving there was no evidence that it was operated at a negligent speed and the sole question submitted to the jury was whether or not at the time of the accident the sand car had lights upon it. Two witnesses supported the plaintiff's theory of the accident while fourteen witnesses supported the theory of the defendant. In our determination we shall confine ourselves entirely to the question whether the testimony of the plaintiff was of such a character as to overcome the positive testimony of the defendant.

Defendant's contention is that the entire testimony of the plaintiff is negative in character and that this case should be determined upon the rule that " 'Where the evidence to establish lack of proper care is negative only, it is overcome by positive evidence to the contrary, though the latter comes from the mouths of defendant's witnesses, and, under such circumstances,

the question is not one for the jury to pass upon, where the physical facts corroborate their testimony (Anspach v. P. & R. Ry., 225 Pa. 528; Keiser v. R. R., 212 Pa. 409; Knox v. R. R., 202 Pa. 504; Zotter v. Lehigh Valley R. R. Co., 280 Pa. 14), which simply means that under such circumstances, the negative testimony, being controverted, does not amount to more than a scintilla, and therefore can not prevail to establish an essential fact': Grimes v. P. R. R. Co., 289 Pa. 320, 324.'' Twining v. Lehigh & N. E. R. R. Co., 310 Pa. 429, 430, 165 A. 489.

The pertinent testimony of the minor plaintiff was as follows (p. 11a): ''Q. When you got just below Spring Garden Street—you say you were on the left-hand side of the car? A. Yes, sir. Q. In the rear? A. Yes, sir. Q. What did you see then? A. I just got above Spring Garden Street, and I saw this dark object moving out. Q. How far away from it were you at the time? A. We were practically on top of it, only a couple of feet away. Q. What happened then? A. Went further on, continued on, and we got about halfway past the car, and that fellow smashed the right side of the rear. Q. You got halfway past this car? A. Yes, sir. Q. When it crashed into the right rear of the car you were driving? A. Yes, sir. Q. with respect to this sand car, can you tell us whether or not—what was the condition of the lights there on the car? A. No lights whatever on the car. Q. No lights on the sand car at all. With respect to motion. Could you tell us whether it was standing or moving? A. The car was moving. Q. The sand car was moving? A. Yes, sir, the sand car was moving.'' (p. 16a): ''Q. When you said that there were no lights at some place, you mean you did not see any lights? A. There were no lights. Q. You did not see any? A. There were no lights on the car. Q. You mean you did not see any? A. There were no lights on the

car. Q. Do you mean you did not see any, or that there weren't any? A. There were no lights there. If there were, I would have seen them."

The testimony of the minor plaintiff was corroborated by two witnesses Robert J. Bulman and Joseph J. Corr who were proceeding in an automobile south on the west side of Delaware Avenue. Bulman, the operator of the automobile testified that when he was approximately fifty feet from the sand car he noticed the sand car coming out from the pier, that he did not notice any lights on the front or rear of the sand car, and that later he returned to the scene of the accident and found that the sand car had moved about ten or fifteen feet from the point where he had first observed it. His companion Joseph J. Corr testified that they were about fifty or sixty feet north and west when the sand car was about one-half or three-fourths of the way out from the east side of the river and that it was moving out into Delaware Avenue toward the center of the street; that he did not see any lights on the car at all, and that he returned to the scene of the accident and found that the sand car had proceeded to a point about fifteen or twenty feet clear of the yard itself. The testimony of the two corroborating witnesses may properly be described as rising to a somewhat higher degree than purely negative testimony in view of the fact that they had observed the car for a distance of at least fifty feet before they came to it and saw the sand car in motion. It clearly is not negative testimony when two witnesses, who were observing the sand car in motion, state that they did not see any lights on the car. When this testimony is taken in conjunction with the testimony of the plaintiff who testified positively that there were no lights on the car and if there had been he would have seen them, although the plaintiff in his position in the rear seat may not have been in the most favorable position

to observe whether the car was lighted or not, still it rises higher than purely negative testimony. Both witnesses for plaintiff were in a position to observe whether the car was lighted, as the headlight of the car was pointed to the side of the avenue on which they were riding. All this testimony must be taken in consideration with the testimony that the car was operated by a fish pole and that during the time the trolley was being changed the current was not on and necessarily the lights were out.

In the case of George v. P. R. T. Co., 285 Pa. 362, 365, 132 A. 184, the following appears in the opinion of the court: "Plaintiff and another witness both testified the car was without headlight or other light. This testimony was contradicted by the motorman and the conductor of the car, both of whom said the headlight was burning. The court below concluded this testimony on behalf of plaintiff and his witness was merely negative and of no weight as against the positive testimony of the motorman and conductor. Under the circumstances, the testimony of plaintiff, at least, was more than negative. He was looking for an approaching car, and his attention was therefore directed to it, and his position enabled him to observe the headlight had it been lit. Such testimony, as this court has frequently held, is more than merely negative and sufficient to require submission to the jury."

The court said in Hoffman v. Pittsburgh & L. E. R. R., 278 Pa. 246, 250, 122 A. 274. "These witnesses were in a position to observe the approaching train and, in fact, were looking and listening for it. Their testimony was not, under the circumstances, negative in character but sufficiently positive to establish a prima facie case and raise a question for the jury."

Conceding for the purpose of discussion that it was impossible for plaintiff in his position on the rear seat to observe whether the sand car was lighted, still

the testimony of his two supporting witnesses that they observed the car coming out on to Delaware Avenue and that they did not see any lights on it was more than merely negative and was sufficient to require submission to the jury. In view of the foregoing, we shall not discuss the testimony of the defendant's witnesses.

Judgment affirmed.