McAllister et al. *v.* The Pennsylvania Railroad
Company, Appellant.

Argued May 20, 1936. Before KEPHART, C. J., SCHAF-
FER, MAXEY, LINN, STERN and BARNES, JJ.

*Philip Price,* with him *Barnes, Biddle & Myers,* for
appellant.

*Isaac Hassler,* for appellees.

OPINION BY MR. JUSTICE BARNES, October 5, 1936:

The plaintiff brought suit for personal injuries sus-
tained by her. The claim of the husband is for loss of
his wife's services. The husband died before trial, and
his administratrix was substituted as co-plaintiff. Plain-
tiff alleged that on October 1, 1929, at about 6 : 28 P. M.
at the Trenton station of the Pennsylvania Railroad
Company, she was on the station platform, and as she
approached the westbound train to board it, she stepped

between the platform of the station and the platform of the car, both feet going into the opening. She claimed that her injuries were due to the negligence of the defendant company in failing to provide a reasonably safe platform for its passengers to enter and leave trains, because the space or opening between the platforms of the station and the car was too wide for proper use, and in failing to afford adequate illumination of the platform.

The case was submitted to the jury, which returned verdicts both for plaintiff individually, and as administratrix. Defendant's motions for judgment non obstante veredicto and for a new trial were discharged by the court in banc, and from the judgments entered on the verdicts defendant appealed to the Superior Court, where the judgments were affirmed. Subsequently appeals were allowed by this Court, upon questions involving the rulings of the trial judge on the admission of evidence over defendant's objections, and upon exceptions to the charge.

The question whether the case should have been submitted to the jury was not stressed upon this appeal. The testimony of plaintiff was that she was compelled to change trains at Trenton station, where she had never been before. She said it was dark and raining, that she had walked across the station platform to enter the car, not knowing there was a wide space between the station platform and the car; that she was proceeding carefully towards the car, which she could see, "watching where she was going," when she fell into the opening. She testified there were no lights.

The lower court held that plaintiff met with sufficient evidence the burden of proof to carry the case to the jury on the question whether her injury was due to negligence on the part of defendant in not providing sufficient illumination for its platform and cars. This question became one of fact under all the evidence and was properly submitted to the jury. We see no error in this determination made by the court below and approved by

the Superior Court: *Wolfe v. Smith, Rec. P. S. & N. R. R. Co.,* 252 Pa. 562; *Hoffman v. Pitts. & L. E. R. R. Co.,* 278 Pa. 246; *Jones v. Pa. Co.,* 60 Pa. Superior Ct. 436; *Fissell v. Hines, Dir. Gen. of Railroads,* 78 Pa. Superior Ct. 179; *Kelso v. Phila. Rapid Transit Co.,* 112 Pa. Superior Ct. 124; *Hirth v. Marano,* 112 Pa. Superior Ct. 187.

The most serious question of the case, however, concerns the injuries allegedly suffered by plaintiff. This is true because plaintiff met with a second accident on March 26, 1930, six months after the first one occurred, when she was a passenger in a trolley car in Philadelphia. She instituted suit against the Philadelphia Rapid Transit Company, and filed there a statement of claim alleging injuries substantially identical with those claimed in the instant case. The defendant contends that the proofs offered by plaintiff failed to individuate the injuries sustained in the present accident from those received in the trolley accident, and failed to apportion between the two accidents the pain and suffering separately attributable to each one of them. There is testimony, however, that in the present case her right leg was hurt, while in the second case it was her left leg which had been injured. In both cases she alleged that injuries were caused to her back.

Following the first accident plaintiff was treated by her physician, Dr. Counsel, who died in January, 1930. Plaintiff then consulted Dr. Axilbund, who continued to treat her to the time of trial, and who appeared at trial as her medical witness.

Dr. Axilbund testified that upon his examination following the first accident he found a limitation to the movements of the right shoulder and other injuries to the back and right leg. At first he said the plaintiff visited him once a week, but later she came to see him only once every two weeks; that the injuries received in the first accident were aggravated by the second accident, and that the effect of the second accident was "merely

to aggravate a pre-existing condition." He also testified that the second accident resulted in an injury to the left leg. The doctor stated that at the time of trial the plaintiff was very much better but there were still present the effects of these injuries. On cross-examination he said that the heat treatments that he had been giving the plaintiff were discontinued before the second accident occurred, but until the second accident he continued to treat her for the first injuries.

The doctor for the defendant, who examined plaintiff shortly after the accident, gave positive testimony that plaintiff's injuries were of little consequence.

Dr. Axilbund admitted under examination his inability to say with certainty what disabilities of plaintiff were due to the first accident, and to differentiate them from those ascribable alone to the second accident. This question was one of difficulty at trial. The instruction given by the trial judge to the jury upon the point was, in effect, for them to do the best they could under the circumstances to apportion the injuries and the pain and suffering arising therefrom between the two accidents. He charged them: "Now, in such an apportionment you should use reasonableness and common sense, and we accord you with that, and your best judgment." He carefully qualified this instruction by telling them that the plaintiff could recover only for the injuries and the pain and suffering caused by the first accident.

Defendant thereupon made objection to this portion of the charge upon the ground that it would permit the jury to speculate upon an apportionment of the injuries between the accidents, because under the evidence there had not been made an exact segregation of the injuries, and that any damages which might be assessed would be the result of a mere guess by the jury. The court ruled in answer to the objection "we do not feel that it should be entirely withdrawn from consideration" by the jury.

It seems to us that however desirable it may be wherever possible to segregate with certainty the effects of

such similar accidents, it would be unreasonable and impossible to require in every case that it be done with exactitude. Not always can a conscientious physician state with *positiveness* what portion of claimant's present injuries was the result of a prior accident, and what portion thereof was caused by a subsequent injury aggravating the effects of the first one. For us to require that this be done would place a premium on false testimony and penalize honest claimants. While the jury should not be permitted to hazard a guess upon vital issues of a case, nevertheless the difficulty of separating the damages resulting from independent causes will not relieve a defendant from liability if there is evidence upon which, as Mr. Justice WALLING said in *Osterling v. Frick*, 284 Pa. 397, 404, "an approximate separation of such damages from those otherwise sustained" can be made. The jury must, under such circumstances, determine where the "dividing line" is to be drawn, under careful instruction of the court.

In reaching this result it must be understood that the application of this ruling cannot be extended to all cases and all circumstances so that thereby the jury be given free rein just "to do the best it can" to make such an apportionment. Always there should be due weight given to the question whether there has been adduced at the trial evidence which makes it possible for the jury to arrive at a proper basis of apportionment of the injuries sustained and the effects resulting from accidents. There must be some evidence to sustain the apportionment made, even though, due to the circumstances of the particular case, the proofs do not attain the degree of precision which would make possible an exact dividing line between the injuries. Here, the medical testimony and other proofs received in evidence on plaintiff's behalf made it possible for the jury to arrive at a reasonable basis of apportionment of the injuries to the extent necessary to meet the requirements we have stated.

The principle of law applicable here has been fully stated by Mr. Justice WALLING, in *Osterling v. Frick, supra,* and we quote from the opinion (p. 403) : "One injured by the default of another will not be denied redress where his damages therefrom are shown approximately, although with less certainty because of injury of like character inflicted upon him by the acts of others. While damages in such cases cannot be based on a mere guess or speculation, yet, where the amount may be fairly estimated from the evidence, a recovery will be sustained even though such amount cannot be determined with entire accuracy. As stated by Judge HENDERSON, in *Hoober v. New Holland W. Co.,* 43 Pa. Superior Ct. 262, 266 : 'Where it is proved that damage has resulted from an injurious trespass and the only uncertainty is as to the exact amount thereof, such uncertainty is not ordinarily ground for refusing to allow any damage at all if the evidence furnished a basis from which a reasonable calculation can be made: 3 Sutherland on Damages, section 672; *Hooper v. Story,* 155 N. Y. 171'; and to like import is *Hartman et al. v. Incline Plane Co.,* 159 Pa. 442; *McElroy v. Filby,* 83 Pa. Superior Ct. 47; *DeGrazia v. Piccardo,* 15 Pa. Superior Ct. 107. In such cases mathematical exactness is not required: *Pierce v. Lehigh Valley Coal Co. (No. 1),* 232 Pa. 165; *Eckman v. Lehigh & Wilkes-Barre Coal Co.,* 50 Pa. Superior Ct. 427; and see *Hetzel v. Baltimore & Ohio R. R. Co.,* 169 U. S. 27; *Priest v. Nichols,* 116 Mass. 401; *Allison v. Chandler,* 11 Mich. 542. . . . Of course, damages cannot be allowed exceeding what the proof shows was the loss caused by the default complained of, and the proof must be of a character to enable an approximate separation of such damages from those otherwise sustained . . . *Pierce v. Lehigh Valley Coal Co. (No. 1),* supra; *Gallagher v. Kemmerer,* 144 Pa. 509; *Pierce v. Lehigh Valley Coal Co.,* 40 Pa. Superior Ct. 566." Chief Justice AGNEW approved the principle in *Gould v. McKenna,* 86 Pa. 297,

303, in these words: "The difficulty of separating the damage from each independent cause may be great, but it does not change the nature of the tortious act of the defendant or relieve him from liability."

Among others, the defendant relies upon a number of cases constituting a well settled line of authority, that where there are two or more causes for injury, for only one of which defendant is responsible, the jury is not to be permitted to guess which cause resulted in the injury. For example, in *Mudano v. P. R. T. Co.*, 289 Pa. 51, 59, it is said: "Where injury may be the result of one of two or more causes, for only one of which defendant is liable, the burden is on the plaintiff to individuate that one, as in fact the proximate cause of his damage, otherwise there can be no recovery." It seems to us that these cases have no application here, for the reason that they deal with two or more possible *causes* for the same injury, whereas here *one cause* is shown, and only one (the railroad accident), and the subsequent cause (the trolley accident) is alleged to have aggravated the original injury.

The remaining question raised by defendant involves the element of damages for future pain and suffering in the absence of testimony as to the precise time required for the present condition of plaintiff to clear up. It is not claimed that there is a permanent disability. Dr. Axilbund testified, in effect, that although the plaintiff was at the time of trial much improved, he could not definitely state how long it would require for this condition completely to disappear. At bar, the case of *Ott v. Philadelphia*, 235 Pa. 354, was called to our attention. A careful examination of the record convinces us that an effort was made here to place before the jury tangible evidence of the time necessary to accomplish complete recovery. While this evidence was not very definite, it was the best that could be offered under the circumstances. The trial judge carefully instructed the jury upon this point, so that we are satisfied no error was

committed which would require a reversal upon this ground alone.

We have reached the conclusion that a reversal here would not be justified; the assignments of error are overruled, and the judgment of the Superior Court is affirmed.