James D. MEYER, Appellee,

v.

UNION RAILROAD COMPANY, Appellant.

Superior Court of Pennsylvania.

Argued Jan. 14, 2004.
Filed Oct. 25, 2004.

J. Lawson Johnston, Pittsburgh, for appellant.

Mark T. Coulter, Pittsburgh, for appellee.

BEFORE: HUDOCK, LALLY-GREEN and BOWES, JJ.

OPINION BY BOWES, J.:

¶ 1 Union Railroad Company ("Union") appeals from the judgment entered on the jury verdict awarding James Meyer $600,000 for damages associated with injuries suffered in the course of his employment with Union. We reverse and remand.

¶ 2 The trial court stated the facts as follows:

On [May 27, 2000] the date when Mr. Meyer suffered his injury, he was working as a brakeman, working a shift that started at midnight and ended at ten o'clock the following morning. In pulling the cutting lever on the caboose, plaintiff pulled on the lever two times, averring that the cutting lever failed to operate. The second time he pulled up on the lever he "just felt something pop in [his] right elbow and got a pretty significant burning sensation." This was approximately 1:30 a.m.

Plaintiff did not immediately ask for medical attention, stating that "he didn't think it was that bad of an injury." However, the symptoms of a radiating burn through the right elbow persisted, even though he worked the following day.

According to Mr. Meyer sometime in between the day after he was hurt and the next day, "I started getting some mild tingling in my left thumb and left index finger." This was the first indication of injury to his left side.

Plaintiff continued to experience pain in this area when he returned to work on June 1st. Mr. Meyer reported the injury at the end of his shift on June 1st 2000, at which time his supervisor urged him to go to the Emergency Department at McKeesport Hospital, which plaintiff proceeded to do.

Approximately June 6th, the Union Railroad set up an appointment for plaintiff with the company physician, Dr. Truxal. After assessing the plaintiff's symptoms, Dr. Truxal suggested that he see an orthopedic specialist, Dr. Levine. Mr. Meyer went to see Dr. Levine on June 7, 2000. Upon examining plaintiff, Dr. Levine placed his right arm in a splint, and set a second appointment for June 21st.

On the June 21st appointment, plaintiff mentioned to Dr. Levine that because the splint was on his right arm, he was forced to do more with his left arm, and that it was resulting in "numbness going up [his] left arm."

Plaintiff continued to treat with Dr. Levine until August, 2000, at which point the relationship between physician and patient deteriorated, whereupon plaintiff treated with Dr. Liss after having received an MRI. According to plaintiff, Dr. Liss stated to plaintiff, "I

think it is time for you to go back to work and work your problem out." Dr. Liss then released plaintiff to return to work in September, 2000.

Plaintiff returned to his position as a brakeman and attempted to continue to perform his job, even though he testified that he was in great pain, and finally "reached a point where I could no longer work." At that point, which was approximately September 22, 2000, Mr. Meyer left his position, and has not returned to work since that time.

. . . .

Thereafter[,] Mr. Meyers [sic] consulted with a neurosurgeon. The neurosurgeon, Dr. El–Kadi, recommended that plaintiff undergo surgery. Plaintiff eventually underwent surgery with Dr. El–Kadi. Plaintiff testified that surgery "did what he said it would do, get rid of the numbness and the pain." However, Mr. Meyers [sic] testified that he continued to have problems such as turning his neck, muscle spasm, and pain. He testified that the injury limited his activities such as fishing, hunting and golf. Mr. Meyers [sic] has not returned to employment since September, 2000.

Trial Court Opinion, at 1–3.

¶ 3 Thereafter, Mr. Meyer initiated this lawsuit against Union for negligence under the Federal Employers' Liability Act, 45 U.S.C. §§ 51–60 ("FELA") and for violating the Federal Safety Appliance Act, 49 U.S.C. § 20101 *et seq.* During the trial, Union submitted its proposed points for charge, including proposed point No. 19 which provided as follows:

If you find that the plaintiff had a pre-existing condition or disability at the time of the accident and that there was a likelihood that he would have sustained the injury about which he complains even if the accident had not occurred, you are to reduce the amount of damages which you award plaintiff by the degree of that likelihood.

Proposed Points for Charge and Jury Instructions, 11/6/02, at 12. After discussing the matter with the trial court and opposing counsel, Union amended its proposed point No. 19 orally, but it could not change the language to the court's satisfaction. The trial court indicated that it would deny the proposed point unless Union fashioned acceptable language. As Union failed to submit a revised point No. 19, the proposed point was not included in the trial court's instructions. Instead, the trial court charged the jury, in pertinent part, that "it is important to remember that there can be more than one cause of an injury. Involvement of any other cause does not prevent a finding for the plaintiff as long as you can find that the employer's negligence played any part, no matter how slight, in causing an injury to the plaintiff." [1] N.T. Trial, 10/28/02, at 520. Union did not object to the jury charge on the ground that the trial court omitted its proposed point No. 19. However, following the jury verdict in Mr. Meyer's favor, Union raised the denial of the proposed point for charge in its post-trial motion.

¶ 4 The jury returned special verdicts finding that Union was negligent and that Union's negligence "played [a] part, no matter how slight,[2] in bringing about"

---

1. Consistent with the contributory negligence principles enunciated in FELA at 45 U.S.C. § 53, the jury also was instructed that if it found that Mr. Meyer's negligence played a part in bringing about his injuries, it could reduce Mr. Meyer's damages proportionately. N.T. Trial, 10/28/02, at 521–22.

2. Unlike the "substantial factor" standard of causation recognized at common law, pursuant to FELA, an employer is liable for damages "if its negligence played any part, even in the slightest, in producing the death or injury." *Rogers v. Missouri Pacific R.R. Co.,*

Mr. Meyer's injury. Special Verdict Form, 11/01/02. The jury also found that Union violated the Federal Safety Appliance Act and that the violation played a part in bringing about Mr. Meyer's injury. *Id.* In addition, the jury found that Union had not established that Mr. Meyer was negligent. *Id.* This appeal followed the denial of Union's motion for post-trial relief.

¶ 5 Union raises two issues:

A. Whether the Union Railroad Company's proposed jury instruction Number 19 was properly preserved for appellate review.

B. Whether the trial court committed an error of law and/or abused its discretion by denying the Union Railroad Company's proposed jury instruction Number 19.

Appellant's brief at 4 (unnecessary capitalization removed).

¶ 6 The trial court reasoned that Union's substantive issue was waived because Union failed to raise a specific objection preserving the issue during trial. The court's conclusion relies upon our holding in *Bezerra v. National Railroad Passenger Corp.*, 760 A.2d 56 (Pa.Super.2000). In *Bezerra,* we held that a plaintiff's assertion challenging the propriety of a trial court's jury instruction was waived by the plaintiff's failure to raise a specific objection to the point for charge that was submitted by the defendant and read to the jury.

¶ 7 Union counters that because it requested the point for charge during the charge conference [3] and raised the issue in its post-trial motion, the issue was pre-

served despite its failure to make a specific objection following the charge. For the following reasons, we agree with Union's contention and address the propriety of the trial court's charge.

■ ¶ 8 Although the general principle reiterated in *Bezerra* applies to bar appellate review where a trial counsel fails to object to a trial court instruction specifically, it does not extend to situations where, as here, a party previously submitted a proposed point for charge and, in a post-trial motion, raised the trial court's refusal to give the charge. *See Brancato v. Kroger Co.*, 312 Pa.Super. 448, 458 A.2d 1377 (1983); *Broxie v. Household Finance Co.*, 472 Pa. 373, 372 A.2d 741 (1977) (absent specific point for charge or specific objection, appellate review of jury charge waived).

¶ 9 In *Brancato,* we concluded that an argument challenging a trial court's denial of a requested charge was preserved for review despite the plaintiff's failure to make a specific objection following the charge because the plaintiff previously had submitted the request in writing and raised the court's denial of the requested points in a post-trial motion. Noting that

[i]t has long been the law in this Commonwealth that **in order to preserve for appellate review an issue concerning the correctness of a trial court's charge to the jury, the complaining party must submit a specific point for charge** or make a timely, specific objection to the charge as given,

*id.* at 1380–81 (emphasis in original) (quoting *Broxie, supra* at 377, 372 A.2d at 743),

352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957).

**3.** Union submitted twenty-four written proposed points for charge. During the charge conference, Union agreed to remove a reference to damages on proposed point No. 19,

but it suggested that the trial court instruct the jury that "[t]he defendant is not responsible for the plaintiff's pre-existing condition or disability." *See* N.T. Trial, 10/28/02, at 465. The trial court denied the point for charge.

we reasoned that the plaintiff in that case had preserved the issue.

¶ 10 Instantly, Union submitted its written proposed points for charge to the trial court prior to the charge conference. During the conference, Union offered to modify the language of proposed point No. 19 in an attempt to accommodate the concerns of Mr. Meyer's counsel. Following the verdict, Union filed a post-trial motion raising, *inter alia*, the court's refusal to instruct the jury on proposed point No. 19. Accordingly, Union preserved the issue pursuant to *Brancato*.

¶ 11 Further, we are not persuaded by Mr. Meyer's contention that Union's offer to modify the requested charge during the charge conference should alter our conclusion. Contrary to Mr. Meyer's position, Union's attempt to soften the language in the written charge did not cloud its request. Indeed, the legal principle that Union wanted to convey to the jury remained clear and consistent: An employer is not responsible for injuries that are caused by an employee's pre-existing condition, and the jury is entitled to apportion its damage award accordingly. Hence, we find that the issue has been preserved.

¶ 12 We review the trial court's jury instructions for an abuse of discretion or legal error controlling the outcome of the case. *Raskin v. Ford Motor Co.*, 837 A.2d 518 (Pa.Super.2003). A jury charge will be found to be adequate unless, when read in its entirety, the charge confused the jury, misled the jury, or contained an omission tantamount to fundamental error. *Id.* "[I]t must appear that the erroneous instruction may have affected the jury's verdict." *Eck v. Powermatic Houdaille, Division of Houdaille Industries, Inc.*, 364 Pa.Super. 178, 527 A.2d 1012, 1019 (1987). Consequently, the trial court has great discretion in forming jury instructions.

*Commonwealth v. Geathers*, 2004 PA Super 111, 847 A.2d 730.

¶ 13 Union argues that under FELA, employers are required to pay only damages that their negligence played a part in causing. Specifically, Union maintains that FELA allows damages to be apportioned in instances where the injury potentially was caused by a pre-existing condition. Union continues that since its expert medical witnesses testified that Mr. Meyer's pre-existing degenerative disc disease could have caused the herniated disc injury, Union was entitled to a charge instructing the jury that if it found that Mr. Meyers would have developed his injury independently of the accident, it should apportion the damages according to the probability that the injury occurred as a result of the pre-existing degenerative disc disease. Union asserts that the trial court's instruction did not properly inform the jury of the law under FELA and that the error was fundamentally unfair and prejudicial to Union's defense.

¶ 14 The measure of damages under FELA is a matter of substantive federal law, *see Humphries v. Pittsburgh and Lake Erie R.R. Co.*, 328 Pa.Super. 119, 476 A.2d 919 (1984), "even though the action is brought in state court." *Dale v. Baltimore & Ohio R.R. Co.*, 359 Pa.Super. 477, 519 A.2d 450, 453 (1986). Accordingly, "[T]he propriety of jury instructions concerning the measure of damages in an FELA action is an issue of 'substance' determined by federal law." *St. Louis Southwestern Ry. Co. v. Dickerson*, 470 U.S. 409, 411, 105 S.Ct. 1347, 84 L.Ed.2d 303 (1985). Hence, our disposition of this case is controlled by federal precedent.

¶ 15 *Sauer v. Burlington Northern Railroad Co.*, 106 F.3d 1490, 1495 (10th Cir. 1997) (cataloging FELA and federal tort case law), is the keystone of Union's argument, wherein the Court of Appeals for

the Tenth Circuit addressed the apportionment principle. The plaintiff in *Sauer* brought a FELA action against his employer based on two work-related injuries. The trial court instructed the jury to "reduce the damages by the likelihood that Sauer would eventually have suffered the injury even if the accident had not occurred." *Id.* at 1495. The plaintiff did not challenge the merits of the instruction; instead, he argued that the defendant's evidence did not support such an instruction. In *dictum*, the court of appeals noted that the instruction "was [the] correct statement of the law." *Id.* The court's *dictum* is instructive in this case. *See Commonwealth v. Laird,* 555 Pa. 629, 726 A.2d 346 (1999) (state courts may look to decisions of intermediate federal courts for guidance in interpreting federal case law).

¶ 16 Similarly, while writing for the Court of Appeals for the Seventh Circuit in *Lancaster v. Norfolk and Western Railway Co.,* 773 F.2d 807, 822 (7th Cir.1985), *cert. denied,* 480 U.S. 945, 107 S.Ct. 1602, 94 L.Ed.2d 788 (1987), the learned Honorable Richard Posner recognized that a FELA defendant may be entitled to an instruction directing the jury to reduce the plaintiff's damages by the probability that the plaintiff would have been injured notwithstanding the defendant's tortious conduct. The plaintiff in *Lancaster* suffered from a latent schizophrenic condition, which manifested itself due to tortious misconduct by defendant's employees. Although the defendant's medical expert opined that the condition eventually would have been triggered by some other event in the plaintiff's life regardless of the employees' conduct, the trial court denied the requested instruction.

¶ 17 On appeal, the plaintiff relied upon the "eggshell-skull" principle, which dictates that a tortfeasor must take his victim as he finds him, and consequently, the tortfeasor is liable for the full extent of the injury that his conduct has caused. Although the court of appeals concluded that the trial court's refusal to grant the instruction was not reversible error, it found that the "eggshell-skull" principle did not bar the requested instruction. The court reasoned that while a tortfeasor is subject to liability for the full extent of the injury he caused, the damages should be reduced to reflect the likelihood that the pre-existing vulnerability or condition would eventually have injured the victim notwithstanding the tortfeasor's conduct. *Id.* at 822. According to that federal court,

> The purpose of this corollary [between the eggshell skull principle and apportionment] is transparent in a case like *Dillon v. Twin State Gas & Elec. Co.,* 85 N.H. 449, 163 A. 111 (1932). The estate of Dillon, who was electrocuted by the defendant's negligence on his way down from the bridge he had just jumped off, **was allowed to get damages only for the short time Dillon would have lived had it not been for the defendant's negligence.** But the principle also applies to cases such as this where the tort victim is highly vulnerable to injury and the damages he suffered must therefore be discounted (multiplied) by the probability, distinctly less than one, that but for the tort he would have lived a normal life.

*Id.* at 822–23 (emphasis added). Hence, the court concluded that since the plaintiff was predisposed to have a schizophrenic episode independently of the defendant's actions, an apportionment instruction was appropriate under the facts of that case.

¶ 18 FELA case law relating to apportionment also is persuasive. In *Stevens v. Bangor and Aroostook Railroad Co.,* 97 F.3d 594 (1st Cir.1996), the Court of Appeals for the First Circuit reinforced the

principle that when a defendant's negligence merely aggravates a FELA plaintiff's pre-existing condition, the defendant is liable only for increased injury caused by its negligence, not for pain and impairment that the plaintiff would have suffered even if the accident had never occurred. Similarly, the District Court of New Jersey came to an identical conclusion in *Evans v. United Arab Shipping Co.,* 790 F.Supp. 516, 519 (D.N.J.1992), wherein it stated that where "an employer's negligence aggravated a preexisting condition ... the defendant must compensate plaintiff only for the aggravation itself and not for the preexisting condition." *Id.* at 519. Hence, apportionment clearly is within the ambit of FELA.[4]

¶ 19 Union's position also is supported by *Dale v. Baltimore & Ohio Railroad Co.,* 520 Pa. 96, 552 A.2d 1037 (1989), wherein our Supreme Court held that under FELA, an employer is liable for injuries only attributable to its own negligence. In *Dale,* the railroad employer sought a jury charge stating that "it would only be liable to the plaintiff for damages resulting from [asbestos-related] injuries caused by its negligence, and not for damages resulting from the plaintiff's hereditary asthma." *Dale v. Baltimore & Ohio R.R. Co.,* 359 Pa.Super. 477, 519 A.2d 450, 453 (1986). The trial court denied the request and charged, "Where the railroad's negligence causes, in whole or in part, an injury to its employee, the railroad is liable for the entire amount of damages and there is no provision for reduction of damages for any causes which concur with the railroad's negligence in causing the injury." *Id.* at

453. This Court affirmed the trial court's charge.

¶ 20 The Pennsylvania Supreme Court granted review and ordered a new trial. Relying upon its interpretation of the United States Supreme Court's holding in *Rogers v. Missouri Pacific Railroad,* 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957), our Supreme Court surmised that "the statutory language 'in whole or in part' relates to liability, and not, implicitly, to damages." *Dale, supra* at 106, 552 A.2d at 1042. The Court acknowledged that while liability attaches in a FELA claim upon a mere showing that an employer's negligence partially caused an injury, financial responsibility was limited to the degree that the employer's conduct contributed to the injury. The Court reasoned that since FELA provides for a comparative apportionment of damages between an employer's negligence and an employee's contributory negligence, the statute implicitly intended that an employer would be responsible only for those damages which it had caused. Accordingly, the Court concluded,

> [A]n FELA employer whose employee has been injured partially by the employer's negligence and partially by other causes, whether those other causes relate to a pre-existing condition or to a concurrent, contemporary cause arising from the circumstances of the injury, must pay damages only for those injuries attributable to its negligence.

*Id.* at 106, 552 A.2d at 1041.

¶ 21 Recently, however, the United States Supreme Court expressed its disfavor with a portion of the *Dale* decision, but

---

4. We also note that the basic principles of apportionment apply equally to other federal statutes. *See e.g., Maurer v. United States,* 668 F.2d 98, 100 (2nd Cir.1981) (Pursuant to Public Vessels Act, "[W]hen a plaintiff has a preexisting condition that would inevitably worsen, a defendant causing subsequent injury is entitled to have the plaintiff's damages discounted to reflect the proportion of damages that would have been suffered even in the absence of the subsequent injury.").

did not overrule it explicitly. Writing for the Court in *Norfolk & Western Railway Co. v. Ayers*, 538 U.S. 135, 123 S.Ct. 1210, 155 L.Ed.2d 261 (2003), Justice Ruth Bader Ginsberg concluded that FELA does not sanction apportionment of damages between a railroad employer and a concurrently liable third party.

¶ 22 The plaintiffs in *Ayers* sued their employer under FELA for damages associated with their work-related asbestosis. The employer introduced evidence that the plaintiffs' asbestosis was caused in part by outside asbestos exposure and sought an instruction that required the jury to apportion damages between the employer and a third party that was not a party to the action. The trial court denied the requested charge and instructed the jury "not to make a deduction [from damages awards] for the contribution of non-railroad [asbestos] exposures to the asbestosis claimants' injuries." *Id.* at 159, 123 S.Ct. 1210 (internal quotations omitted). Upon review, the Supreme Court affirmed the trial court's instruction concluding, "Nothing in the statutory text instructs that the amount of damages payable by a liable employer bears reduction when the negligence of a third party also contributed in part to the injury in-suit." *Id.* at 160, 123 S.Ct. 1210.

¶ 23 While disposing of the employer's argument in favor of apportionment between it and the non-party tortfeasor, Madame Justice Ginsburg observed that the authority that our Supreme Court provided in *Dale* was the only support for the employer's position. Stating as follows, Madame Justice Ginsberg then determined that standing alone, *Dale* was insufficient to defeat the established interpretation of FELA relating to an employer's joint and several liability despite the fact that the

injuries were partially caused by third-party tortfeasors.

Norfolk identifies only one FELA decision supporting its position: *Dale v. Baltimore & Ohio R. Co.*, 520 Pa. 96, 105–107, 552 A.2d 1037, 1041–42 (1989). But *Dale* cited no previous decisions on point and has not been followed by any other court. It is therefore a reed too slim to overcome the statutory language and the otherwise consistent historical practice in the lower courts.

*Id.* at 163, 123 S.Ct. 1210. Significantly, Madame Justice Ginsberg noted that the weight of authority permits a FELA employer to bring separate indemnification and contribution actions against concurrently liable tortfeasors and reasoned that "[t]hose third-party suits would have been unnecessary had the FELA itself authorized apportionment." *Id.* at 162–63, 123 S.Ct. 1210.

¶ 24 It is axiomatic that we are bound by United States Supreme Court decisions that confront matters of federal law. However, for the following reasons, we are constrained to follow the Pennsylvania Supreme Court's interpretation in disposing of the case-at-bar. Madame Justice Ginsberg's learned opinion did not address whether a plaintiff's pre-existing condition was apportionable under FELA, the controlling issue in the instant case, nor did she discuss other federal cases dealing with this issue. *E.g., Sauer, supra; Lancaster, supra; Evans, supra; Stevens, supra* (discussing aggravation of plaintiff's pre-existing injury under FELA). Unlike *Dale*, the issue before the *Ayers* Court related to a third-party's concurrent negligence rather than a plaintiff-employee's pre-existing condition.[5] Hence,

5. Likewise, the issue confronted by the United States District Court for the Western District of Pennsylvania in *Farmer v. Pennsylvania Railroad Co.*, 311 F.Supp. 1074 (E.D.Pa. 1970), was more akin to *Ayers* than *Dale* since it involved concurrent causes rather than an

we believe that Madame Justice Ginsberg's negative reference to *Dale* disallowed only such a broad application of the conclusion therein that would permit a jury to apportion damages between an employer and another concurrently liable third party.

¶ 25 Moreover, since the *Ayers* Court continued to recognize an employer's right to seek contribution or indemnification from concurrently liable third parties, *Ayers* does not naturally extend to cases involving pre-existing conditions.[6] If we were to extend *Ayers* to these cases, employers would lack any recourse to recoup losses incurred by satisfying damage awards for injuries that were caused solely by a pre-existing condition. Therefore, we believe that we are bound to follow the *Dale* Court's interpretation until the United States Supreme Court has addressed the issue directly. Hence, we decline Mr. Meyer's invitation to extend the principle espoused in *Ayers* to the facts of the case *sub judice*.

¶ 26 Next we must determine whether Union submitted adequate evidence to support the requested instruction. When an appellate court reviews a challenge to the trial court's refusal to give a specific jury instruction, the court's role is to determine whether the record supports that decision. *Levey v. DeNardo*, 555 Pa. 514, 725 A.2d 733 (1999). In fulfilling this role, we must keep in mind that a trial court should charge on a point of law when there is **some factual support** in the record for the charge. *Id.* We have stated:

> "The charge of the trial court should not exclude any theory or defense that has support in the evidence." *Rizzo v. Michener*, 401 Pa.Super. 47, 584 A.2d 973, 976 (1990). Moreover, "where there is a dispute as to what the relevant facts are, this dispute must be submitted to the jury along with instructions on points of law which, with a view to the evidence in the case, are relevant." *Bailey* [*v. Pennsylvania Electric Co.*], 409 Pa.Super. 374, 598 A.2d [41,] 49 [ (Pa.Super.1991) ] (quoting *Ferrick Excavating and Grading Co. v. Senger Trucking Co.*, 506 Pa. 181, 190, 484 A.2d 744, 748 (1984)).

*McClintock v. Works*, 716 A.2d 1262, 1266 (Pa.Super.1998).

¶ 27 The *Dale* Court did not address the amount of evidence expected to support an apportionment instruction; however, Pennsylvania case law relating to common-law tort claims suggests that Union had to provide the jury only with a reasonable basis of apportionment. *See McAllister v. Pennsylvania R.R. Co.*, 324 Pa. 65, 187 A. 415 (1936) (jury apportionment proper where medical testimony and other proofs made provided jury basis of apportionment). *Cf. Martin v. Owens–Corning Fiberglas Corp.*, 515 Pa. 377, 385, 528 A.2d 947, 950 (1987) (absent expert guidance, jury apportionment of damage in asbestos case considered speculation, conjecture, or "[r]ough approximation"). Hence, we conclude that while Union carried the burden of producing some evidence to support its proposed apportionment instruction, it was

---

alternate, independent cause. We observe that damages resulting from concurrent causes that combine to produce a single result are indivisible, and "the courts have refused to make an arbitrary apportionment [of indivisible damages] and each of the causes is charged with responsibility for the entire harm." RESTATEMENT (SECOND) OF TORTS § 433A(2) cmt. i, at 439 (1965).

6. Madame Justice Ginsberg also suggested that impleader is appropriate to join a concurrently negligent third party to the underlying FELA action. *See Ayers, supra* at 165 n. 23, 123 S.Ct. 1210.

not required to demonstrate an exact percentage representing the likelihood that the degenerative condition caused Mr. Meyer's injury.

¶ 28 After reviewing the evidence presented in this case we conclude that Union satisfied its burden of production. During trial, Union presented the videotaped depositions of two expert medical witnesses, Dr. John Talbot, a neurologist, and Dr. Michael Levine, an orthopedic surgeon, both of whom opined that Mr. Meyer's pre-existing degenerative disc condition could have caused the herniated disc.

¶ 29 Dr. Talbot testified that Mr. Meyer's herniated disc could have been caused by either the work-related incident or the pre-existing condition. However, contrary to Mr. Meyer's contention on appeal, we do not read Dr. Talbot's testimony as vacillating. Indeed, Dr. Talbot testified that, assuming the accuracy of Mr. Meyer's claim that he first experienced the symptoms within a day of the incident, the herniated disc was likely work-related. However, Dr. Talbot then offered two reasons why he did not believe Mr. Meyer's assertion was valid. First, the medical record did not support Mr. Meyer's claim that he felt pain in his left arm within a day of the incident. Second, Dr. Talbot opined that the mechanism of the injury was inconsistent with a herniated disc in the neck. The relevant testimony follows:

Q. Doctor, let me ask you your opinion about the cause of this herniated disc that you saw on the August 18, 2000 MRI. Taking into consideration the history that you received, the records that you received, the diagnostic studies and your total evaluation of the case, do you have an opinion as to what caused the herniated disc?

A. I could have one of two opinions.

Q. Go ahead.

A. And my opinion is based on what version of the story is correct. Mr. Meyer, when I saw him in the office on October 25, 2000, told me that the pain in his neck and left arm occurred within a day post accident; and if there clearly is a time relationship between the accident and the subsequent pinched nerve, then it's my opinion that the incident of May 27, 2000, is the cause of the herniated disc.

But on the other hand, there are some features to suggest that maybe that's not correct. No. 1, the mechanism of injury as described to me by the patient and recorded in medical records is not one that would have a high likelihood of being associated with a soft disc herniation in the neck. Also, Mr. Meyer was seen by a number of health care professionals, first including the McKeesport Hospital emergency room, then Dr. Truxal and his nursing staff, Dr. Truxal's occupational medicine, and then Dr. Levine; and it wasn't until June 21 of 2000 that Dr. Levine reported some mild discomfort in the left arm, and it wasn't even until after that that, you know, the pain was reported by health care professionals as being more intense. Dr. Levine, when he first saw the numbness in the arm, thought, well, it might be a pinched nerve at the other elbow, which would be much more compatible with the mechanism of injury.

N.T. Deposition, 10/23/02, at 22–24. Therefore, there was specific factual support for Dr. Talbot's conclusion that Mr. Meyer's herniated disc could have been unrelated to the accident and, instead, a result of Mr. Meyer's degenerative disc disease.

¶ 30 Similarly, Dr. Levine also found that Mr. Meyer's pre-existing condition

could have led to the present herniated disc condition. Dr. Levine testified that based on his five examinations of Mr. Meyer and subsequent consultation with Dr. Liss, a spine specialist in Dr. Levine's office, he believed that Mr. Meyer suffered from symptomatic cervical spondylosis, arthritis of the neck, which could lead to a herniated disc or present identical symptoms of a herniated disc. Dr. Levine also agreed with Dr. Talbot's opinion that if Mr. Meyer's herniated disc was caused by the May 27, 2000 incident, the symptoms would have arisen soon after the injury.

¶ 31 Federal law relating to apportionment instructions in FELA claims buttresses our conclusion that Union's evidence supported the proposed charge. In *Sauer, supra* at 1494 (citations omitted), the Court of Appeals for the Tenth Circuit sustained a FELA instruction similar to Union's proposed charge No. 19, noting that the employer's evidence "need only be sufficient to permit a rough practical apportionment." As referenced above, the employer therein sought an instruction directing the jury to reduce the plaintiff's damages according to the likelihood that he would have suffered the injury independently of the defendant's negligence. The trial court granted the charge. The court of appeals affirmed, observing that "although apportionment may be difficult, like comparative negligence[,] it is a question for which juries are well trained. Apportionment can be proved without expert testimony stating the percentage of injury attributable to the different causes." *Id.* (citations omitted).

¶ 32 Compare *Sauer* with *Lancaster, supra,* an earlier decision wherein the Court of Appeals for the Seventh Circuit reasoned, "[T]he defendant put in no evidence that would have enabled the jury to make sensible apportionment of damages between the defendant's conduct and the normal vicissitudes of life that would have confronted Lancaster, and might have precipitated his madness, even if his supervisors had behaved." *Lancaster, supra* at 823. While the standard articulated in *Sauer* appears to be more lenient than the *Lancaster* Court's prior conclusion, neither case requires an employer to adduce sufficient evidence to substantiate a mathematical proportion. Similarly, we note that Mr. Meyer's reliance upon *Maurer, supra,* for the proposition that Union's evidence must establish the exact percentage of the damages the pre-existing condition caused is misplaced. Unlike the FELA cases, *Maurer* involves the burden of proof a defendant must satisfy in order to reduce a plaintiff's damage award; it does not address the relaxed burden of producing factual evidence to support a jury instruction.

¶ 33 The instruction in *Sauer* was supported by expert medical opinions from three witnesses, which unanimously acknowledged that the victim's pre-existing, degenerative bone condition would have worsened notwithstanding the employer's negligence. Although the experts could not ascertain the exact manner that the condition would progress or the probability that the condition would become symptomatic, they all concluded that the condition would have worsened independently over time or due to an "insignificant event such as getting in and out of a compact car . . . ." *Id.* at 1495. The court concluded that the apportionment instruction was supported by the experts' opinions.

¶ 34 As the evidence that Union presented in this case was similar in quantity and quality to the evidence the defendant presented in *Sauer,* we conclude that Union offered sufficient evidence to support its requested instruction. Hence, the trial court erred in refusing to charge the jury relating to the apportionment principle.

Further, since the jury charge did not cover apportionment aside from a reference to comparative negligence and did not even discuss the pre-existing condition as a possible cause for the injury, we are constrained to vacate the judgment entered on the verdict and remand for a new trial. *See Lockhart v. List*, 542 Pa. 141, 665 A.2d 1176 (1995) (reversible error where instruction omits basic and fundamental material). Accordingly, we decline Mr. Meyer's request for attorneys' fees and damages under Pa.R.A.P. 2744.

¶ 35 Judgment vacated. Matter remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.