# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeffrey Deitrick,                :
            Appellant    :
                       :
         v.           :  No. 394 C.D. 2018
                       :  ARGUED: December 13, 2018
Sunbury Housing Authority   :

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**         **FILED: January 28, 2019**

Jeffrey Deitrick (Resident) appeals from an order of the Court of Common Pleas of Northumberland County (trial court) denying his motion for post-trial relief in his personal injury lawsuit. Resident asserted that the trial court should have granted a spoliation of evidence point of charge that an adverse inference was warranted because the Sunbury Housing Authority (Authority) could not locate photographs that a former employee had taken of a concrete step outside Resident's apartment shortly after his injury. On appeal, we consider whether the trial court's refusal to grant Resident's request to render the charge calls for a judgment notwithstanding the verdict (JNOV) or a new trial. In accordance with the trial court's determination, we affirm.

In June 2016, Resident filed a civil action against the Authority alleging that in June 2014 he fell and injured himself outside of his apartment as a result of a

crumbling concrete step. He averred that the Authority was negligent in installing, maintaining, and permitting a dangerous and defective condition to exist on its property. He sought non-economic damages for his knee injury, which required surgical replacement of his right quadriceps tendon. (June 16, 2016, Complaint at 1-4; Reproduced Record "R.R." at 5-8a.)

By way of background, Resident testified at a deposition that he lived in a handicapped unit at the Authority's Memorial Acres despite having no physical handicap. Describing access to his apartment, he stated that "[y]ou could either walk up a ramp or walk the sidewalk to one step, step on the porch and in." (January 23, 2017, Deitrick Deposition "Dep.", Notes of Testimony "N.T." at 10; R.R. at 32a.) Testifying that neither he nor his visitors used the ramp, he stated that he always used the step to access his front door. (N.T. at 10-11; R.R. at 32a.) Upon further questioning, Resident clarified that he used the ramp on days when he went grocery shopping because he had a little cart. (N.T. at 16; R.R. at 33a.) In any event, he testified that there was nothing wrong with the step when he moved there in February 2014 and that he did not notice any defect before his fall. (N.T. at 11; R.R. at 32a.) However, the Authority pointed out that in his interrogatory response Resident indicated that the step had been defective since his move-in date.[1] (*Id*.)

Regarding the June 2014 incident, Resident testified at the subsequent jury trial that he was carrying items out of his apartment in preparation for a yard sale when he sustained an injury while carrying a light nightstand. Estimating that he had traversed the step approximately five times beforehand, he testified that it crumbled and gave way when he stepped on it. (December 14, 2017, Trial, N.T. at 40-41, 50-51; R.R. at 217-18a, 227-28a.) Thereafter, he testified that he was unable

---

[1] (Deitrick Dep., Interrogatories, Answer No. 22, Defendant's Ex. 1.)

to walk and sat down on the edge of the porch until the arrival of an ambulance. (N.T. at 42; R.R. at 219a.)

Resident's contemporaneous account of the accident as relayed to the paramedic was inconsistent with his testimony at trial. Describing the circumstances when the ambulance arrived at the scene, the paramedic testified that Resident was alert and sitting outside on his stoop. She stated that Resident advised her that "he was carrying I [sic] *dresser* outside for a yard sale, he *missed the step* coming down out of his front door, the *dresser* slipped when he fell and it hit his knee." (N.T. at 63; R.R. at 240a) (emphasis added). Her testimony was consistent with a report that she testified was prepared within twenty-four hours of the June 2014 ambulance dispatch.[2]

Turning to evidence directly germane to Resident's proffered spoliation charge, we observe that *both* parties had issues with missing photographs of the step. Resident testified as follows regarding his efforts to photograph the step in order to show its condition:

> A. I had, but the phone I had them in the battery went dead, and I lost the pictures.
> Q. When did you take those pictures?
> A. Right after the accident happened.
> Q. Why did you take those pictures?
> A. Just in case I needed them.
> Q. For what?
> A. I just was always taught to take pictures of stuff just in case you needed it.

(Deitrick Dep., N.T. at 17; R.R. at 34a.)

---

[2] (December 14, 2017, Trial, EMS Report, Defense Ex. D-2.)

As for the Authority, it is undisputed that a maintenance employee took photographs of the step after the incident. Confirming that the photographs could not be located, the Authority's project manager testified as to her belief that the employee took them on his personal cell phone. (December 14, 2017, Trial, N.T. at 104-05; R.R. at 281-82a.) In addition, acknowledging that she had never seen the photographs, she testified that she had seen the step soon after the June 2014 incident and that it was intact. Further, stating that the step had never broken into pieces, she noted that there was no problem with the step indicated in Resident's February 2014 move-in inspection report, which both she and Resident had signed. (N.T. at 102-04; R.R. at 279-81a.)

The Authority's executive director also testified. She stated that the photographs could not be located and that the individual who took them no longer worked for the Authority. (N.T. at 30-31; R.R. at 207-08a.) In addition, she testified that when she personally went to Resident's unit for a walk-through soon after the maintenance employee's site visit, the step was intact and did not present a tripping hazard. (N.T. at 87; R.R. at 264a.) Further, she testified that when she spoke with Resident during the walk-through, he stated that he should have been using the ramp.[3] (N.T. at 88; R.R. at 265a.)

At the conclusion of the trial, Resident submitted proposed jury instructions including the spoliation of evidence charge. He asserted that the charge was necessary because the Authority's failure to preserve its photographs was tantamount to disposing of evidence. The trial court disagreed, opining that it was not appropriate to lead the jury to believe that the Authority had deliberately disposed of evidence. Subsequently, the jury found that the Authority was not

---

[3] Resident acknowledged that the ramp was right outside his front door and closer than the step. (N.T. at 48-49; R.R. at 225-26a.)

4

negligent. In his motion for post-trial relief, Resident alleged that the trial court's denial of the jury instruction hampered his case and prevented him from discrediting the Authority. The trial court denied the motion and Resident's appeal followed.

In general, a trial court has considerable discretion in forming jury instructions and is responsible for charging a jury on all relevant issues. *Meyer v. Union R. Co.*, 865 A.2d 857, 862 (Pa. Super. 2004). A trial court should charge on a point of law only when there is some factual support in the record for the charge. *Id.* Further, a "trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the [a]ppellant was prejudiced by that refusal." *Commonwealth v. Sandusky*, 77 A.3d 663, 667 (Pa. Super. 2013) (citation omitted).

> On review:
>
> A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error.

*Id.* at 667. A new trial will be afforded only if an erroneous jury instruction amounted to a fundamental error or the record is insufficient to determine whether the error affected the verdict. *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 335 (Pa. 2014).

In the present case, Resident proffered the Spoliation of Evidence jury instruction, which provides:

> 1. If a party [disposes of] [alters] a piece of evidence before the other party had an opportunity to inspect it, and
>
> 2. The party who [disposed of] [altered] the evidence should have recognized the evidence was relevant to an issue in this lawsuit, you may find that this

5

evidence would have been unfavorable to them unless they satisfactorily explain why they [disposed of] [altered] this evidence.

(Pa. Suggested Standard Civil Jury Instruction 5.60; R.R. at 170a.) Spoliation of evidence has been defined as the non-preservation or significant alteration of evidence for pending or future litigation. *Pyeritz v. Commonwealth*, 32 A.3d 687, 692 (Pa. 2011). In general, there is a duty to preserve relevant evidence where a party knows that litigation is pending or likely and it is foreseeable that discarding evidence would be prejudicial. *Mount Olivet Tabernacle Church v. Edwin L. Wiegand Div*., 781 A.2d 1263, 1270 (Pa. Super. 2001).

By way of analysis, the spoliation charge could apply to *both* parties in that each acknowledged that photographs had been taken on a cell phone but could not be located.[4] In any case, the trial court ruled that the Authority's failure to locate its photographs did not constitute spoliation of evidence in light of the fact that Resident had the ability to take or obtain his own photographs. As the trial court reasoned:

> [Resident] had explained the circumstances of his injury to the jury. He had every opportunity to present any photographic evidence of the conditions of the steps leading to his apartment. This was not a duty or responsibility of the Authority. [Resident] had the burden of proof to establish a defective condition. To grant the point of charge would have resulted in an adverse inference that would not have been justified.
>
> The taking of a photograph is so commonplace in this era of the cell phone. There was no onus on the Authority to photograph the steps. This was [Resident's] front stoop, so clearly he had every opportunity himself to photograph it or to ask a relative, friend or neighbor to do

---

[4] Following the trial, only Resident requested the spoliation charge. (N.T. at 110; R.R. at 287a.)

6

so if he would be asserting that the steps were defective or not bring [sic] properly maintained.

Thus, the [Authority's] failure to locate photographs of [Resident's] front outdoor step, when [he] had the ability to take or obtain his own photographs of the scene of his injury, does not constitute spoliation of evidence, and [his] suggested point of charge was properly denied.

(March 2, 2018, Trial Court Opinion "Op." at 3-4.)

Further, the trial court rejected Resident's contention that the Authority knew or should be charged with knowing that litigation was likely and that it was foreseeable that failing to preserve the Authority's photographs would prejudice Resident. The record supports the trial court's determination. As noted, the Authority witnesses testified that they had never seen the photographs, that the maintenance employee[5] took them on his personal cell phone, and that he no longer worked for the Authority. In addition, both witnesses offered their contemporaneous personal observations of the step and supporting documentary evidence as to the absence of a problem with the step.

Finally, in addition to the fact that Resident not only had the opportunity to take his own photographs but actually did so, notwithstanding the omission of the disputed jury instruction, the jury heard potentially damaging testimony regarding the loss of the Authority's photographs and Resident's forceful closing argument implying that the Authority was attempting to hide the condition of the step by failing to produce them.[6] Accordingly, there is no indication that Resident was

---

[5] We find it noteworthy that this employee was a maintenance worker, not an investigator or someone otherwise involved in risk management or legal matters.

[6] Resident in his closing argument vigorously argued that the jury should make an adverse inference regarding the Authority's missing photographs:

7

prejudiced by the trial court's denial of the spoliation charge or that the omission of that charge affected the jury's verdict.

Finding no abuse of discretion, we affirm.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

---

[Witness] admits that after [Resident] reported [accident] to her staff, people from the housing authority went out and they took some photos of this area.  Where are the photos now?  Poof.  What did they show?  Ladies and gentlemen, you can infer from the fact that they didn't turn over these photos, and that whatever was on them was bad for the housing authority.

[Resident] reports the step crumbled.  I guarantee the photos show the step crumbled.  They didn't turn over those photos because they don't want you to know the truth. . . .  Don't fall for it.  . . . They want you to believe [Resident] is a liar.  Think about that.  He reported that the step crumbled.  That's not something somebody lies about, because he knows once he reports that, they are going to go out and they will be able to see for themselves if it crumbled. . . . Someone would lie, oh, I slipped on water.  The water is no longer there.  This isn't that.  This is a piece of the step broke off.  That's not something somebody lies about.

(N.T. at 132-33; R.R. at 309-10a.)

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeffrey Deitrick,      :
     Appellant  :
          :
    v.      :  No. 394 C.D. 2018
          :
Sunbury Housing Authority  :

# **O R D E R**

AND NOW, this 28th day of January, 2019, the order of the Court of Common Pleas of Northumberland County is hereby AFFIRMED.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge