J-A23007-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JOSEPH LOOMIS AND JANAN LOOMIS, INDIVIDUALLY AND AS ADMINISTRATORS OF THE ESTATE OF LEAH LOOMIS, DECEASED | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : | |
| v. | : : : | No. 367 MDA 2021 |
| MIA BOMBA, GINA BOMBA, WILLIAM FARBER, JR. | : : | |

Appeal from the Judgment Entered March 15, 2021
In the Court of Common Pleas of Lackawanna County Civil Division at
No(s):  2018-00930

BEFORE:   PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:          **FILED: DECEMBER 1, 2021**

Plaintiffs/Appellants Joseph and Janan Loomis, individually and on

behalf of the estate of Leah Loomis (the Loomises), appeal from the judgment

entered in favor of Defendants/Appellees Mia Bomba, Gina Bomba, and

William Farber, Jr. (collectively Appellees), following a jury trial.  Upon review,

we affirm.

The trial court detailed the underlying facts as follows:

This action arose from a tragic boating incident that occurred at
Newton Lake on September 26, 2017, when defendant, Mia
Bomba ("Mia"), was operating a motorboat that was co-owned by
her mother Gina Bomba, ("Gina"), and William Farber, Jr.
("Farber").  ...  In August 2017, Gina and Farber purchased the

_____

[*] Former Justice specially assigned to the Superior Court.

subject motorboat ... and prior to the boating accident on September 26, 2017, Mia operated the motorboat on more than 20 occasions.

On the afternoon of September 26, 2017, Mia requested her mother's permission to use the motorboat with her friend and classmate, Leah Loomis ("Leah"), and Gina granted her consent provided that Leah first secured the permission of "[Leah's] mother or father." Mia contacted another friend, Alexis Igneri ("Igneri"), who joined Mia and Leah at Newton Lake for the boat ride. The motorboat was equipped with a passenger seat to the right of the operator, a transom bench seat situated directly behind the operator, and front seats with grab rails positioned in the front (bow) section which faced towards the operator. When the motorboat departed from its dock on September 26, 2017, Mia was driving, Igneri was positioned behind her on the transom bench seat, and Leah was seated in the front seat while facing Mia.

Mia and her passengers intended to drive one lap around the lake in a counterclockwise direction, as required by Newton Lake rules, dock the boat in the center of the lake, and swim in that area. At the time, Newton Lake did not have nor enforce a speed limit for the operation of motorboats. A Newton Lake resident, William Dunstone, observed Mia and her passengers drive by at a "cruising speed" of 20 to 25 miles per hour that was "just fast enough to get the boat on plane." Jeff Williams, who was pulling his motorboat into its dock as Mia and her passengers passed behind him, estimated their speed to be 35 to 40 miles per hour.

As Mia's motorboat was completing its first turn and starting to straighten while it continued its lap around the lake, Leah "suddenly" positioned herself on her knees on the front seat cushion, faced away from Mia and towards the bow and lake, and was "striking a pose" on her knees and with outstretched arms "as if flying on the bow of the boat." As the boat simultaneously approached a wave or wake, which Mia believed had been caused by the travel of the motorboat before its turn, Mia reduced the speed of the boat while it "started to bounce," and once the motorboat hit the wave or wake, Leah fell over the front of the boat and into the water "more towards the right side." Mia instinctively turned the boat to the left to avoid Leah, but heard the boat make contact with Leah.

Mia immediately stopped the boat, jumped in the lake to search for Leah, and told Igneri to call 911. Since Mia could not find Leah and Igneri appeared to be in shock and unable to communicate with the 911 operator, Mia climbed back into the boat to speak to the operator on Igneri's cellphone while Mia also attempted to contact her mother, Gina, on her own cellphone. Mr. Dunstone heard someone scream "help" and observed two young women "waving their hands and yelling for help," so he and his father boarded their boat and drove to their location. Mr. Williams likewise heard their screams, and backed his boat out of its dock, "drove around to the other side" of the lake, and arrived to find Mia and Igneri who "were pretty hysterical."

* * *

Upon arriving at Mia's boat, Mr. Dunstone threw an anchor and lifejacket into the water to designate the spot where Leah was last seen[.] . . . Emergency personnel promptly arrived via a pontoon boat, and advised Mr. Dunstone to drive Mia and Igneri to the shoreline in Mia's boat. Leah was not found by nightfall, but her deceased body was discovered and recovered the following day.

Trial Court Opinion, 3/12/21, at 2-6 (record citations and footnotes omitted).

On July 24, 2018, the Loomises filed a complaint against Appellees alleging negligence under the Wrongful Death and Survival Act, 42 Pa.C.S.A. §§ 8301-8302. A trial was held in October 2020, after which the jury found in favor of Appellees. On October 19, 2020, the Loomises filed post-trial motions, which the trial court denied on March 12, 2021. This timely appeal followed.[1]

---

[1] The Loomises and trial court have complied with Pa.R.A.P. 1925. As the trial court noted, the Loomises raised four issues in their post-trial motion, but "their statement identifies 15 alleged errors that they intend to assert on appeal." Supplemental Order Pursuant to Pa.R.A.P. 1925(a), 5/10/21, at 1
*(Footnote Continued Next Page)*

- 3 -

In their brief, the Loomises present two questions for our review:

1. Whether the Trial Court erred in failing to instruct the jury on the applicable sections of the Pennsylvania Boating Handbook[?]

2. Whether the Trial Court erred in concluding that Trooper Ives' testimony regarding [the] hearsay statement of Alexis Igneri was admissible under the course of conduct exception[?]

Loomis Brief at 4.

In their first issue, the Loomises contend the trial court erred in failing to instruct the jury on the authoritative nature of the Pennsylvania Boating Handbook.[2] The Loomises claim they were prejudiced by the court's denial of their request to read excerpts from the Handbook to the jury, in conjunction with Pennsylvania Standard Civil Jury Instruction 13.110, which states:

[A] [An] [insert regulation or standard] in effect at the time the accident occurred provided:

[quote relevant regulatory provisions]

[Name of plaintiff] claims that [name of defendant] violated this [regulation] [standard]. If you find that [name of defendant] violated the [regulation] [standard], then [name of defendant]'s violation of this [regulation] [standard] is evidence you must consider, along with all other evidence, in deciding whether [name of defendant] was negligent.

Pa. SSJI (Civ) 13.110. *See* Loomis Brief at 25-26.

_____

(citations omitted). The court concluded—and we agree—that to the extent the Loomises assert issues that were not properly preserved, those issues are waived on appeal. *Id.* at 2 (citations omitted).

[2] The Pennsylvania Boating Handbook is published by the Pennsylvania Fish and Boating Commission and serves as the text for the Commission's eight-hour boating course. Pennsylvania Boating Handbook, 3/17, at 2.

We are not persuaded by the Loomises' argument. It is well-settled that,

> We review the trial court's jury instructions for an abuse of discretion or legal error controlling the outcome of the case. A jury charge will be found to be adequate unless, when read in its entirety, the charge confused the jury, misled the jury, or contained an omission tantamount to fundamental error. "[I]t must appear that the erroneous instruction may have affected the jury's verdict." Consequently, the trial court has great discretion in forming jury instructions.

*Meyer v. Union R. Co.*, 865 A.2d 857, 862 (Pa. Super. 2004) (citations omitted). Trial courts are not required to use the language of requested jury charges, but may utilize different formulations so long as they "adequately and clearly" cover their subjects. *Buckley v. Exodus Transit & Storage Corp.*, 744 A.2d 298, 306 (Pa. Super. 1999). The court may refuse to submit for the jury's consideration a point for charge that is not strictly in accordance with the facts in evidence or the law in the case. *Id.*

Here, the Loomises allege the trial court's failure to give the requested verbatim charges impacted the jury's verdict. Specifically, they contend the court erred in denying their charges quoting the Pennsylvania Boating Handbook as follows:

4. A standard in effect at the time the accident occurred provided:

Boat operators are responsible for:

● **the safety of all passengers in the boat**
● **the boat's wake and any damage caused by it**

● maintaining a proper lookout and operating at a safe speed for conditions;

● using good seamanship which is the foundation of the navigation rules

Plaintiffs claim that Defendant Mia Bomba violated this standard.

If you find that Defendant Mia Bomba violated the standard, then Defendant Mia Bomba's violation of this standard is evidence you must consider, along with all other evidence, in deciding whether Defendant Mia Bomba was negligent.

Pa. SSJI (Civ) 13.110.

Pennsylvania Boating Handbook

5. A standard in effect at the time the accident occurred provided:

**Boating operators are responsible for the actions of all persons on board their boats.**

Plaintiffs claim that Defendant Mia Bomba violated this standard. If you find that Defendant Mia Bomba violated the standard, then Defendant Mia Bomba's violation of this standard is evidence you must consider, along with all other evidence, in deciding whether Defendant Mia Bomba was negligent.

Pa. SSJI (Civ) 13.110.

Pennsylvania Boating Handbook 2015 and 2017 edition

8. A standard in effect at the time the accident occurred provided:

**Boats must be operated at a rate of speed that does not endanger the life or property of any person**

Plaintiffs claim that Defendant Mia Bomba violated this standard. If you find that Defendant Mia Bomba violated the standard, then Defendant Mia Bomba's violation of this standard is evidence you must consider, along with all other evidence, in deciding whether Defendant Mia Bomba was negligent.

Pa. SSJI (Civ) 13.110.

Pennsylvania Boating Handbook 2015 and 2017 edition

9. A standard in effect at the time the accident occurred provided:

To ensure a safe and problem free boating experience, make a checklist and use it before each trip

\* \* \*

● **Conduct an onboard safety discussion with passengers: Everyone on board needs to know in advance what is expected of them and where they can find needed equipment. The discussion should include information on** the location and proper use of life jackets (PFDs), fire extinguishers, visual distress equipment and first-aid kit. Explain emergency procedures; rules prohibiting discharging waste overboard; basic operation of the marine radio (if one is installed); other items such as boat operation, weather and/or water conditions, anchoring procedures, docking and line handling, and **the dangers of falling overboard and being struck by the propeller.**

Plaintiffs claim that Defendant Mia Bomba violated this standard. If you find that Defendant Mia Bomba violated the standard, then Defendant Mia Bomba's violation of this standard is evidence you must consider, along with all other evidence, in deciding whether Defendant Mia Bomba was negligent.

Pa. SSJI (Civ) 13.110

Pennsylvania Boating Handbook

**See** Loomis Brief at 26-29 (emphases in original).

In response, the trial court explained its denial of the requested charges,

stating:

Many of the boating handbook's provisions contained in the Loomises' proposed points for charge were addressed in the prepared instructions based upon Pa. SSJI (Civ.) §§ 13.100 and 13.110 (5th ed.). For example, the requested instructions in Nos. 4 and 5 concerning the operator's responsibility for the safety and actions of passengers, maintaining a proper lookout, operating at

a safe speed, and using good seamanship were discussed in the prepared instructions based upon 30 Pa.C.S.A. § 5501(b) and 58 Pa. Code §§ 103.4 — 103.5. Proposed point for charge No. 8 quoting the handbook's language regarding the proper "rate of speed" was covered in the distributed instructions with respect to 58 Pa. Code. §§ 103.16, 105.3(2). Consequently, the only boating handbook comments that were not discussed in the drafted instructions were . . . the pre-departure "checklist" in No. 9. In that regard, it is noteworthy that no lay or expert witness ever mentioned the operator's alleged duty with respect to a checklist as to life jackets, weather, float plan, fuel, battery, fire extinguishers, or boat maintenance.

During the charge conference, the Loomises requested jury instructions … based on their proposed points for charge No.s. 4-5, 8-9. In response, it was announced that such an instruction would be provided based upon the Fish and Boat Commission's regulations, but not on any provisions contained in the handbook that were not reflected in a regulation. To that end, an observation was made that the Suggested Standard Civil Jury Instructions "Subcommittee Note references Section 286 of the Restatement (Second) of Torts," [] states that such an instruction is warranted only with "an administrative regulation." … The Loomises were advised that they were at liberty to reference any provision in the handbook and argue "that [it] was part of the standard of care," but would not be granted "a specific instruction" advising the jury that it was "a government regulation standard of care" under Pa. SSJI (Civ.) § 13.110 (5th ed.).

Trial Court Opinion, 3/12/21, at 27-29 (citations and footnote omitted).

Upon review, we agree that with the exception of requested charge 9 (the boating checklist), the trial court's charges, as given, encompassed the Loomises' requests. N.T., 10/9/20, at 10-12.[3] In their argument, the

---

[3] Pertinently, the trial court charged the jury:

Now, what are the duties under the law for an operator of a boat in Pennsylvania? Section 5501 Sub-paragraph B of the

*(Footnote Continued Next Page)*

Loomises do not discuss the charge as given, or explain how the court's decision not to use the verbatim language from the Boating Handbook was improper. *See* Loomis Brief at 31-37.

---

Pennsylvania Fish and Boat Code states that no person shall operate a watercraft upon water in a negligent manner. And that a person operates a watercraft negligently if he or she operates the watercraft without due regard for the safety of other persons in, upon or along the water. [The Loomises] claim that Defendant Mia Bomba violated this law. If you find that Defendant Mia Bomba violated this law, then you must find her negligent. If you find that Defendant Mia Bomba did not violate this law, then you must still decide whether she was negligent because she failed to act as a reasonably careful person would under the circumstances established by the evidence in this case. The Fish and Boat Commission has promulgated regulations establishing rules of the road so-to-speak for boat operators in Pennsylvania. Section 103.4 of those regulations states that every boat operator shall maintain a proper lookout by sight and hearing in order to make a full appraisal of the situation and of the risk of collision. Section 103.5 provides that every boat must proceed at a safe speed so that it can take proper and effective action to avoid a collision and to be stopped within a distance appropriate for the prevailing circumstances and conditions. Section 103.16 states that no person may operate a watercraft at a speed greater than is reasonable and prudent under the circumstances, having regard for the actual and potential hazards then existing nor at a speed greater than will permit the operator to maneuver the boat with safety. Section 105.3 Subsection 2 states that an operator of a boat less than 20 feet in length shall not operate at a greater than slow no wake speed while a person is standing on a boat. [The Loomises] claim that the Defendant Mia Bomba violated those Fish and Boat Commission regulations. If you find that the Defendant Mia Bomba violated any of those regulations, then her violation of that regulation is evidence you should consider along with all other evidence in deciding whether she was negligent.

N.T., 10/9/20, at 9-12.

Without citing applicable legal authority, the Loomises claim the language in Boating Handbook constitutes "boating regulations" and "governmental and industry standards." Loomis Brief at 30-31. They argue it was reversible error for the court to not charge the jury with the verbatim language, and cite this Court's decision in **Wood v. Smith**, 495 A.2d 601 (Pa. Super. 1985), and the Commonwealth Court's decision in **PennDot v. Weller**, 574 A.2d 728 (Pa. Cmwlth. 1990).[4] We find both cases distinguishable.

In **Wood**, a homeowner was killed after falling off scaffolding erected by masons outside his home. The jury entered a defense verdict, and on appeal, the plaintiff/estate argued the trial court erred in only charging the jury on negligence generally, and "by refusing to explain the legal significance of government and industry standards which had been testified to during the trial." **Id.** at 603. In finding the trial court's charge to be misleading, this Court stated:

> We find that **in the context of the entire charge** and in view of the fact that the jurors were presented with two standards of conduct, the above quoted charge is an insufficient explanation of the degree of care required by the defendants. Without further explanation, the jury may very reasonably have assumed that since the defendants were not required by law to adhere to the OSHA [Occupational Health and Safety Act] or ANSI [American National Standards Institute] standard, their failure to do so was irrelevant. As it reads, the charge seems to indicate that the defendants' conduct need only be measured against that generally used in the trade and not against the more stringent OSHA and ANSI standards. The customary method of performing work could

---

[4] As a Commonwealth Court case, **Weller** is not binding on this Court. **See Commonwealth v. Ortega**, 995 A.2d 879, 885 (Pa. Super. 2010).

- 10 -

be a negligent method despite the fact that it was in general use in the trade and could, if the evidence warranted it, be found so by the jury.

*Id.* at 603-04 (citations and footnotes, emphasis added).

Here, the Loomises do not allege error in the trial court's general negligence charge, or that the jury was presented with contradictory standards of conduct which needed clarification as in *Woods*. Reading the court's charges "in context," we do not find *Woods* useful.

In the Loomises' next case, *Weller*, the plaintiff sued the Department of Transportation, claiming negligence relating to snowplowing. *Weller*, 574 A.2d at 729. On appeal, the DOT claimed the trial court erred in charging the jury that the DOT's winter maintenance manual was a regulation. *Id.* at 731. The Commonwealth Court rejected this argument. It explained:

The manual is not a formal regulation adopted under the Commonwealth Documents Law in order to have the force of law. However, Arthur Battistone, a DOT assistant maintenance manager in Washington County and Harry Byrd, Jr., a DOT foreman in Washington County, both referred to the manual as "the Bible". Specifically, Battistone stated "[i]t's what we are to follow". No evidence in the record indicates otherwise.

In context, the trial judge used the word "regulations" in a generic sense, rather than in the specific Commonwealth Documents Law sense; in the charge, as quoted above, we note that he labeled the manual's contents simply as "policies and procedures," not as provisions of a law. Because DOT's own witnesses testified as to the definitive authority of the manual, the charge was not prejudicial.

*Id.* at 731-32.

We must review each case and charges independently and in context. Unlike *Weller*, there was no testimony in this case by employees of a state

- 11 -

agency — or otherwise — regarding the authoritative nature of the Boating Handbook, and the trial court charged the jury using language from the actual and applicable Pennsylvania Boating Regulations. *See* N.T., 10/9/20, at 10-12; *see also* 30 Pa.C.S.A. § 5501(b) and 58 Pa. Code §§ 103.4-103.5. The Loomises have provided no support, either evidentiary or legal, for their contention that the Pennsylvania Boating Handbook constituted regulatory authority or an industry standard; likewise, there is no evidence regarding policies and procedures based on the Handbook.

The Handbook states:

> ***PLEASE NOTE:*** **This handbook was prepared to provide boaters with information they need to know when operating watercraft in Pennsylvania waterways.** It reviews the Commission's boating regulations and includes information and tips to follow while boating. **It does not present the actual laws and regulations.** This handbook is the text for the Commissioner's Pennsylvania Basic Boating 8-hour boating course.

Pennsylvania Boating Handbook, 3/17, at 2 (some emphasis added). By its express language, the Handbook does not "present the actual laws and regulations." Accordingly, we are not persuaded by the Loomises' argument that the trial court's denial of their requested jury charges "likely confused the jurors as to the state of the law" or misled the jury. Loomis Brief at 35-36.

In their second issue, the Loomises claim the trial court erred in admitting hearsay testimony from Pennsylvania State Trooper Carl Ives to the effect that Alexis Igneri "gave a statement consistent with the statement of Mia Bomba." Loomis Brief at 37. After the Loomises' counsel objected to the

trooper's testimony, Appellees' counsel indicated Ms. Igneri would testify. However, she did not testify. Preliminary, we could find this claim waived.

Decisions regarding admissibility "are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party." **Phillips v. Lock**, 86 A.3d 906, 920 (Pa. Super. 2014) (citation omitted).

Trooper Ives testified about investigating the accident and interviewing Mia Bomba and Alexis Igneri. N.T. 10/6/20, at 12-14. The following exchange occurred:

> [Defense Counsel]: And the statement that Alexis Igneri gave you is consistent with the statement you obtained from Mia Bomba, correct?
>
> [Trooper Ives]: It is consistent. The only difference was the position of Miss Igneri.
>
> [Defense Counsel]: In what regard?
>
> [Plaintiffs' Counsel]: Just note an objection your Honor, to Miss Igneri's statement since it's hearsay.
>
> The Court: The objection is on the basis of hearsay?

N.T., 10/6/20, at 16.

The Loomises' counsel did not respond to the trial court's question before the court, *sua sponte*, determined it would instruct the jury that they could only consider Trooper Ives' testimony "regarding the statement from

- 13 -

Miss Igneri not for the truth of what's contained in the statement." N.T., 10/6/20, at 16-17.

As shown above, the Loomises' counsel did not immediately object to Appellees counsel's question as to whether Alexis Igneri's statement was consistent with that of Mia Bomba, or to Trooper Ives' answer; the Loomises' counsel objected only after Appellees' counsel asked "in what regard" Ms. Igneri's statement was different. Thus, we could find waiver. **See Lockley v. CSX Transp.**, Inc. 66 A.3d 322, 325 (Pa. Super. 2013) ("It is axiomatic that [i]n order to preserve an issue for appellate review, a party must make a **timely** and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error will result in waiver of that issue.") (citation and internal quotation marks omitted; emphasis added).

However, in the absence of waiver, this issue lacks merit. Hearsay is a statement which:

> (1) the declarant does not make while testifying at the current trial or hearing; and
>
> (2) a party offers in evidence to prove the truth of the matter asserted in the statement.

Pa.R.E. 801(c).

Here, Trooper Ives' testimony was not hearsay. Trooper Ives did not quote or relate what Alexis Igneri said, he simply characterized it. Trooper Ives did not testify about truthfulness, but merely described Alexis Igneri's

statement as "consistent" with the statement of Mia Bomba, with the exception of "the position." Finally, even if viewed as hearsay, the trial court advised the jury that they should not consider the statement for truthfulness. Accordingly, we discern no error in the trial court's admission of Trooper Ives' statement.

Judgment affirmed.

P.J. Panella joins the memorandum.

P.J.E. Stevens files a dissenting statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/1/2021